UTICA MUTUAL INSURANCE COMPANY *vs*. LIBERTY MUTUAL
INSURANCE COMPANY.

Middlesex.    November 15, 1984. — January 29, 1985.

Present: GREANEY, C.J., ARMSTRONG, & FINE, JJ.

*Workmen's Compensation Act*, Exhaustion of administrative remedies,
Jurisdiction of Industrial Accident Board.

An action by an insurance company seeking a declaration that the defendant
company was liable on a particular workers' compensation claim should
have been dismissed, where the plaintiff, which had participated in a
conference with a single member of the Industrial Accident Board under
G. L. c. 152, § 7, at which the employee and the defendant were rep-
resented, had commenced the action without exhausting the procedure
for administrative review prescribed by G. L. c. 152, §§ 8 & 10. [264-
266]

Where a dispute exists as to which of two or more insurance companies is
liable on a particular workers' compensation claim, the Industrial Acci-
dent Board may join in the proceedings before it any company whose
participation it deems necessary for the expeditious and complete dispo-
sition of the controversy. [267-268]

The jurisdiction of the Industrial Accident Board over a dispute between two
insurance companies as to which of them was liable on a particular
workers' compensation claim was not terminated by the board's approval
of a lump sum settlement between the employee and one of the com-
panies. [268]

CIVIL ACTION commenced in the Superior Court Department
on November 23, 1981.

The case was heard by *Joseph S. Mitchell, Jr.*, J.

*Laura A. Sanford* for the defendant.

*Richard E. Heifetz* for the plaintiff.

GREANEY, C.J.    This is a dispute between Utica Mutual
Insurance Company (Utica) and Liberty Mutual Insurance
Company (Liberty) over which company is liable for payments
on a workers' compensation claim. A judge of the Superior
Court, after a trial without a jury, entered a judgment on Utica's

action against Liberty for declaratory relief under G. L. c. 231A. The judgment declared that Liberty was obligated to reimburse Utica in the amount of $29,139.29 for Utica's payments to the employee. We reverse the judgment.

The following facts were found by the judge. On November 27, 1979, the employee injured the middle finger of her right hand while operating a sewing machine for a sportswear company. Her employer was notified immediately of the injury. The employer, however, did not notify Liberty, its workers' compensation insurer in 1979, of the accident. On August 8, 1980, over eight months after the accident, the employer filed an "Employer's First Report of Injury" form with the Industrial Accident Board (board) and notified Utica, its then insurer, that the employee had been injured on November 27, 1979. Utica received the report on August 12, 1980, and immediately began an investigation. On August 28, 1980, the employee signed a "Certificate of Dependency Status" form, which was subsequently filed with the board. On December 10, 1980, her physician filed a "Standard Form Surgeon's Report" with Utica which indicated that the November 27, 1979, accident was the cause of the employee's condition and that the condition had gradually become worse. In January, 1981, the physician performed surgery on the employee's hand.

As a result of its investigation, Utica apparently satisfied itself that the employee had suffered an industrial injury on November 27, 1979, which, because of complications, required surgery. Upon the filing of a "Standard Form For Agreement as to Compensation" with the board, Utica began in January, 1981, to pay weekly compensation to the employee. In July, 1981, however, Utica discovered that Liberty, not it, had been the insurance company providing workers' compensation coverage to the employer in 1979. Utica attempted to persuade Liberty to take over the claim and to reimburse it for payments already made to the employee. In September, 1981, Liberty declined to accept the case voluntarily, asserting that its position had been prejudiced by Utica's handling of the claim. Utica in October, 1981, requested a conference, pursuant to § 7 of G. L. c. 152, before a single member of the board to discon-

tinue compensation payments on the basis that Liberty was the insurer liable on the claim. The employee was present and both companies were represented at this conference. In February, 1982, the single member denied the request for discontinuance and ordered Utica to continue payments to the employee. After the § 7 conference had been held, but before the single member had issued his order, Utica, on November 23, 1981, filed the present action against Liberty in the Superior Court seeking reimbursement for all payments made by it to the employee. Subsequently, in May, 1982, Utica entered into a lump sum settlement with the employee which was approved by the board. The judgment against Liberty in the amount of $29,139.29 reflects the lump sum and all prior compensation paid by Utica.

1. The Superior Court should not have decided the merits of the case because, at the time Utica brought its action, there were available to it remedies within the administrative scheme established by G. L. c. 152 which Utica had neglected to pursue. It is well established that a court "will not decide a work[ers'] compensation case on the merits unless the record demonstrates that the parties have exhausted their available administrative remedies. *Broderick's Case,* 320 Mass. 149, 151 (1946). Cf. *Sydney* v. *Commissioner of Corps. & Taxation,* 371 Mass. 289, 293 & n.7, 294-295 (1976)." *Assuncao's Case,* 372 Mass. 6, 8 (1977). The requirement of exhaustion of administrative remedies was described in *Assuncao's Case* as "a sound principle of law and jurisprudence aimed at preserving the integrity of both the administrative and judicial processes." *Id.* at 8. Strict enforcement of the requirement has the following advantages: (1) "allowing the administrative process to run its course before permitting full [judicial] review gives the administrative agency in question a full and fair opportunity to apply its expertise to the statutory scheme which, by law, it has the primary responsibility of enforcing," *id.* 8-9; and (2) it "avoid[s] piecemeal review of compensation claims with its concomitant potential for usurpation of the integrity of the administrative process." *Id.* at 9.

These principles do not lose their force because the dispute concerns which of two insurers may be liable on a particular claim. Chapter 152, § 16, as amended by St. 1953, c. 314, § 6, broadly mandates that "[q]uestions arising under this chapter . . . shall . . . be determined by the division." In addition, c. 152, § 15A, provides a procedure for resolution by the board of controversies between insurers as to which is liable to pay a claim.[1] Resolution by the board of the present disagreement is especially appropriate in light of Liberty's allegations that it is not liable because the employee's initial injury did not cause her subsequent disability and that Utica's handling of the claim caused prejudice to Liberty's interests. These are the precise sorts of questions which should be resolved by the board within the framework of c. 152 as part of a comprehensive and exclusive scheme to settle workers' compensation claims outside of the judicial system. See *Opinion of the Justices,* 309 Mass. 571, 595 (1941); *Broderick's Case,* 320 Mass. at 150-151.

After discovering that the accident had occurred in 1979, during Liberty's coverage, Utica properly requested a conference under § 7 seeking to discontinue its payments to the employee and to compel Liberty to assume responsibility for the claim. Utica brought this action prior to the issuance of the order by a single member of the board denying the discontinuance. Chapter 152, § 7, as appearing in St. 1979, c. 483, provides, however, that "[a]ny party aggrieved by an order filed under this section may within ten days from the filing of such an order request the division to set the case for a hearing before another member thereof." Section 8 of c. 152 describes procedures for the latter hearing, which is generally more formal in nature than the § 7 conference. Chapter 152, § 10, as amended through St. 1978, c. 348, § 1, contemplates a further

---

[1] Chapter 152, § 15A, provides that where two insurers agree that the employee is entitled to compensation but are unable to agree which insurer is to pay, a single member of the board may select one to pay pending final resolution by the board, and where the insurers disagree also as to whether the employee is entitled to compensation, the division shall hold an expedited hearing to determine the questions of both liability and compensation.

appeal to a reviewing board by a party aggrieved by a § 8 decision, specifying that "[i]f a claim for review is filed by either party within thirty days from the filing of a decision rendered under section eight, the reviewing board shall hear the parties . . . ." Upon the denial of its request for a discontinuance, Utica was thus required to request a § 8 hearing before another member of the board, and, if still dissatisfied, a § 10 hearing before the full board, before appealing to the Superior Court.[2] *Assuncao's Case,* 372 Mass. at 9-10. See also *Shershun's Case,* 286 Mass. 379, 381-382 (1934). Indeed, the single member's order denying the discontinuance specifically advised Utica that a § 8 hearing was available to it. Instead of acting on this information, Utica had moved the dispute directly to the Superior Court, circumventing the exclusive and mandatory administrative appeal provisions of G. L. c. 152.[3] Because of Utica's failure, the Superior Court should have dismissed the action.[4]

---

[2] Liberty was not formally a party to the § 7 conference because the employee had never filed a claim against it. It was, however, represented at the conference. Utica contends that the lack of a formal claim against Liberty was the reason for the single member's denial of the request for a discontinuance. There is nothing in the record to indicate what exactly transpired at the conference or why Utica's request for a discontinuance was denied. In part 2 of this opinion, we shall discuss the point that Liberty could have been formally impleaded if it were necessary to do so.

[3] Utica did not even wait until the single member had issued his order before it sought a judicial remedy. It filed its action on November 23, 1981, some two months before the single member denied its request for a discontinuance.

[4] There is no question that Liberty adequately saved its rights on these issues. In its answer, Liberty specifically alleged that Utica had failed to exhaust available administrative remedies. Liberty also filed two motions to recommit the dispute to the board, the first prior to the commencement of the trial and the second after Utica had presented its evidence. Both motions were denied.

To the extent that it might be argued that the judge exercised discretion to entertain the action under G. L. c. 231A, § 1, when the plaintiff had failed to exhaust administrative remedies, see *General Dynamics Corp.* v. *Assessors of Quincy,* 388 Mass. 24, 27-30 (1983); *Boston* v. *Second Realty Corp.,* 9 Mass. App. Ct. 282, 283-285 (1980), we would only say that any such exercise would have been an abuse of discretion since there is nothing to show that the remedies at the board are seriously

2. To avoid this conclusion, Utica argues two points aimed at establishing that it had no recourse but to press its claim against Liberty in the Superior Court.

Utica first contends that c. 152 contains no procedure to join a third party, and that since Liberty was not a party to the employee's original claim, the board could not adjudicate Utica's claim against Liberty. There is nothing in c. 152 which prevents the board from joining a third party against whom a claim has not been made by an employee but whose presence is necessary to dispose completely of the claim. See Locke, Workmen's Compensation § 179 (2d ed. 1981). Section 5 of c. 152 allows the board considerable latitude in "mak[ing] rules consistent with . . . chapter [152] for carrying out its provisions." The board is not bound by strict legal precedent or legal technicalities, but, rather, governed by the practice in equity. See *Duggan's Case,* 315 Mass. 355, 357 (1944); *Pierce's Case,* 325 Mass. 649, 652 (1950); Locke, Workmen's Compensation, *supra* §§ 29 and 463. The term "in equity" is consonant with the liberal construction to be given to c. 152 and has been "applied to supply a remedy [even] where there [may be] a gap in the statute."[5] Locke, Workmen's Compensation, *supra* § 29, at 34. See e.g., *Garnhum's Case,* 349 Mass. 473 (1965). Moreover, G. L. c. 152, § 5, directs that the board's "[p]rocess and procedure shall be as simple and summary as reasonably may be."[6] Although the "problem of [impleader] rarely arises in practice," Locke, Workmen's Compensation, *supra* § 179, at 201, we conclude that the board may join, by any means reasonably calculated to give notice and a right to be heard, any other insurer or insurers it deems

inadequate or that the case involved novel questions, repetitive problems or a matter of great public interest. See *Sydney* v. *Commissioner of Corps. & Taxn.,* 371 Mass. 289, 294 (1976); *Boston* v. *Second Realty Corp., supra* at 283-285 & n.5.

[5] This concept would appear (at least in this context) to incorporate prior equity practice under which an adjudicative tribunal could, on its own motion, order a cause to stand over in order that an indispensable party might be joined. See *Sutcliffe* v. *Cawley,* 240 Mass. 231, 238-239 (1921).

[6] The board is exempt from the provisions of the State Administrative Procedure Act. See G. L. c. 30A, § 1(2).

necessary for the expeditious and complete disposition of a controversy like the present one.[7]

Utica also relies on the judge's ruling that whatever "jurisdiction the [b]oard might have had over the matter was terminated with its approval of the lump sum settlement" between Utica and the employee. As a general proposition, once a lump sum agreement has been approved by the board further judicial inquiry into the merits of the original claim is precluded except as needed to determine allegations of fraud or mistake. See *Perkins's Case,* 278 Mass. 294, 299 (1932); *Hansen's Case,* 350 Mass. 178, 180 (1966). It hardly follows that the rule operates to allow judicial determination of a claim where a party has failed to exhaust administrative remedies. Utica voluntarily concluded the lump sum agreement and has to take the consequences of its failure to exhaust available administrative remedies, notwithstanding the lump sum agreement.

3. We therefore conclude that the decisive event in this case occurred when Utica decided to ignore its remedies before the board and to institute a collateral court action on its claim against Liberty. At that juncture, all the facts were out in the open and indicated that the accident for which Utica had chosen to pay occurred during the period of Liberty's coverage and that §§ 8 and 10 of c. 152 were available to test Liberty's liability. The logical and compelled result of Utica's failure is dismissal of its Superior Court action. The judgment is re-

---

[7] The decisions cited by Utica (*Fitzpatrick's Case,* 331 Mass. 298 [1954]; *McConolouge's Case,* 336 Mass. 396 [1957]; *Hankowski's Case,* 339 Mass. 388 [1959]) are not to the contrary. Nowhere in any of those cases does the court state that a claim must be made by an employee on all insurers before an insurer with an interest in the claim can be made a party before the board.

There are no Massachusetts decisions directly on point. In *Rasso's Case,* 324 Mass. 190 (1949), the court held that the trial judge committed no abuse of discretion in denying a motion to implead a third party who the insurer argued was partly responsible for the employee's dermatitis. The court based its ruling, however, on evidence which indicated that the third party had no causal connection with the condition, and it did not decide whether, in an appropriate case, joinder might be allowable.

Utica Mutual Ins. Co. *v.* Liberty Mutual Ins. Co.

versed. A new judgment is to be entered dismissing the action because of Utica's failure to exhaust its administrative remedies.[8]

*So ordered.*

---

[8] We take no position on whether Utica, in view of the lump sum agreement and the time limitations set forth in G. L. c. 152, § 7, for an appeal of an order under that section, can resurrect any rights it might have had under c. 152.