## Joseph Taylor's Case.

No. 97-P-0264.

Suffolk. December 18, 1997. - April 2, 1998.

Present: Jacobs, Gillerman, & Spina, JJ.

*Workers' Compensation Act,* Amount of compensation, Decision of Industrial Accident Reviewing Board, Subsequent injury. *Insurance,* Workers' compensation insurance. *Statute,* Construction.

This court concluded that a reviewing board of the Department of Industrial Accidents exceeded its statutory authority under G. L. c. 152, § 11C, where the board, after affirming the decision of the administrative judge, permitted a claimant to reopen his case to pursue a previously unasserted claim. [497-498]

A reviewing board of the Department of Industrial Accidents erred in allowing a workers' compensation benefit claimant who had sustained a "subsequent injury" to "elect" to receive benefits at the higher rate in effect at the time of his original injury, where the provisions of G. L. c. 152, § 35B, require that such a claimant receive benefits at the rate in effect as of the date of the subsequent injury. [498-501]

APPEAL from a decision of the Industrial Accident Reviewing Board.

*Paul M. Moretti* for the insurer.

*Paul S. Danahy* for the employee.

SPINA, J. The defendant insurer appeals a decision of the reviewing board (board) of the Department of Industrial Accidents that permitted Joseph Taylor, the employee, to elect to avoid the operation of G. L. c. 152, § 35B, in order to receive benefits at the rate in effect at the time of his original injury, rather than at the rate in effect at the time of the recurrence of that injury. We reverse.

The facts are not disputed. Taylor suffered a work related injury to his lower back on March 31, 1991. He received temporary and total incapacity benefits under G. L. c. 152,

§ 34,[1] in the amount of $320.51 per week, based upon 66 2/3% of $480.77, his average weekly wage at the time of his injury. He underwent a laminectomy at the L 4-5 level and was able to return to full-time, modified employment on August 18, 1991. In December, 1991, the workers compensation statute was amended so as to reduce benefits. St. 1991, c. 398. Taylor continued working[2] until May ·15, 1993, when his condition again worsened. He commenced physical therapy and was only able to work part-time. He also began receiving partial incapacity benefits at that time, pursuant to G. L. c. 152, § 35. On December 14, 1993, Taylor underwent a third surgical procedure, and he has not returned to work. His average weekly wage as of that date was $563.30. Since December 14, 1993, Taylor has received temporary and total incapacity benefits under § 34[3] in the amount of $337.98, based upon 60% of his average weekly wage of $563.30.

There is no dispute that Taylor's condition as of December 14, 1993, was a subsequent injury in the form of a recurrence of his injury of March 31, 1991. Both Taylor and the insurer assumed the terms of G. L. c. 152, § 35B, applied to his § 34 claim. That statute, as inserted by St. 1970, c. 667, § 1, states as follows:

> "An employee who has been receiving compensation under this chapter and who has returned to work for a

---

[1]General Laws c. 152, § 34, as amended by St. 1985, c. 522, § 42, provided:

> "While the incapacity for work resulting from the injury is total, during each week of incapacity the insurer shall pay the injured employee a weekly compensation equal to two-thirds of his average weekly wage before the injury, but not more than the maximum weekly compensation rate nor less than the minimum weekly compensation rate, unless the average weekly wage of the employee is less than the minimum weekly compensation rate, in which case said weekly compensation shall be equal to his average weekly wage.
>
> "The total number of weeks of compensation due the employee under this section shall not exceed two hundred and sixty."

[2]Taylor underwent a second surgical procedure on November 4, 1992, and was unable to work for approximately one month.

[3]Statute 1991, c. 398, § 59, amended G. L. c. 152, § 34, by reducing weekly compensation from 66 2/3% to 60% of an employee's average weekly wage and by reducing the number of weeks of compensation from 260 to 156.

period of not less than two months shall, if he is subsequently injured and receives compensation, be paid such compensation at the rate in effect at the time of the subsequent injury whether or not such subsequent injury is determined to be a recurrence of the former injury; provided, that if compensation for the old injury was paid in a lump sum, he shall not receive compensation unless the subsequent claim is determined to be a new injury."

Taylor contended that he was entitled to 66 2/3% of his average weekly wages as of December 14, 1993, or the pre-1991 percentage factor applied to his post-1991 wages. The insurer applied the 60% rate found in G. L. c. 152, § 34, as amended by St. 1991, c. 398, § 59. Taylor appealed the action of the insurer. An administrative judge agreed with the insurer. Taylor appealed to the board, which affirmed the decision of the administrative judge. However, without the issue having been raised by either party, a majority of the board determined that Taylor should be permitted to elect whether § 35B would apply. It gave him leave to reopen his case, retract his claim under § 35B within sixty days of the filing of the board's decision, and seek compensation under § 34 at the rates in effect at the time of his original injury. The insurer appeals from that decision.

The issues presented in this appeal are (1) whether the board may allow a party to reopen his case to pursue an unasserted claim, and (2) whether G. L. c. 152, § 35B, is elective.

1. *Authority of the board.* The board is an administrative tribunal and, accordingly, "possesses only such authority and powers as have been conferred upon it by express grant or arise therefrom by implication as necessary and incidental to the full exercise of the granted powers." *Levangie's Case*, 228 Mass. 213, 217 (1917). *Hansen's Case*, 350 Mass. 178, 180 (1966). The powers of the board are set forth in G. L. c. 152, § 11C, as amended by St. 1991, c. 398, § 31, and are, in relevant part, as follows:

"The reviewing board shall reverse the decision of an administrative judge only if it determines that such administrative judge's decision is beyond the scope of his authority, arbitrary or capricious, or contrary to law. The reviewing board may, when appropriate, recommit a case before it to an administrative judge for further findings of

fact. Where the reviewing board affirms the decision of an administrative judge, it may do so in summary fashion and without discussion of the issues raised on appeal."

Here, the board unanimously affirmed the decision of the administrative judge. However, a majority of the board, sua sponte, fashioned what it acknowledged was an "unusual disposition," and gave Taylor leave to reopen his case in order to retract his § 35B claim.

Taylor had only sought the application of the 66 $2/3$% factor to his average weekly wage as of his last date of employment. The narrow question before the board was whether the 66 $2/3$% factor or the 60% factor applied to Taylor's claim, and the board answered the question. The relief granted was not "necessary and incidental to the full exercise of the [board's] powers." *Levangie's Case, supra.* Nor was it "necessary to dispose completely of the claim." *Utica Mutual Ins. Co.* v. *Liberty Mutual Ins. Co.*, 19 Mass. App. Ct. 262, 267 (1985). Once the board affirmed the decision of the administrative judge, its authority over the case ended. Compare *Hansen's Case, supra.* Additionally, the board's power to recommit is, under § 11C, limited to the power to "recommit . . . for further findings of fact." There was neither an order nor a need for further findings. The board exceeded its statutory authority when it permitted Taylor to reopen his case after it affirmed the decision of the administrative judge. See G. L. c. 152, § 12(2); G. L. c. 30A, § 14(7)(*b*), (*c*).

2. *General Laws c. 152, § 35B, issues.* The board unanimously affirmed the decision of the administrative judge, who determined that § 35B required the application of rates in effect as of December 14, 1993, the date of Taylor's "subsequent injury." Those rates were inserted by St. 1991, c. 398, § 59. The board correctly construed the operative effect of § 35B. See *Don Francisco's Case*, 14 Mass. App. Ct. 456 (1982); *Bernardo's Case*, 24 Mass. App. Ct. 48 (1987).

However, after so holding, a majority of the board decided that whether § 35B would apply should be the option of the employee in circumstances where, as here, the prevailing rates in effect at the time of the "subsequent injury" may be overall less favorable to the employee than those in effect at the time of

the original injury.[4] The board reasoned that § 35B "was intended to address the problem of employees suffering a 'subsequent injury' being stuck with a compensation rate which was economically relevant to an often remote date of the original injury. We think that, like Sec. 51A,[5] Sec. 35B must be construed to benefit employees, not to disadvantage them." It relied upon dictum[6] in *Madariaga's Case*, 19 Mass. App. Ct. 477 (1985), for the proposition that the Legislature intended § 35B to serve to enhance benefits, and never to reduce benefits, between the time of injury and the time of recurrence.

"[I]t is established that the work[ers'] compensation act is to be construed broadly, rather than narrowly, in the light of its purpose and, so far as reasonably may be, to promote the accomplishment of its beneficent design. . . . But it is also settled that, in construing a statute, its words must be given their plain and ordinary meaning according to the approved usage of language . . . and that the language of the statute is not to be enlarged or limited by construction unless its object and plain meaning require it." *Johnson's Case*, 318 Mass. 741, 746-747 (1945) (citations omitted). The words of § 35B are plain and unambiguous. "An employee . . . shall . . . be paid such compensation at the rate in effect at the time of the subsequent injury." These words are mandatory, not precatory. Compare *Hashimi* v. *Kalil*, 388 Mass. 607, 609-610 (1983). In *Don Francisco's Case*, 14 Mass. App. Ct. at 463, we stated, "[u]nder § 35B . . . the employee's right to compensation . . . originate[s] in the change in the employee's condition subsequent to his return to work." Section 35B looks to the date

---

[4]It appears that Taylor received benefits under §§ 34 and 35 for approximately 49 weeks prior to December 14, 1993. If the 1985 rates apply, he would receive weekly § 34 benefits of $320.51 for 211 weeks, or $67,627.61. If the 1991 rates were to apply, he would receive weekly § 34 benefits of $337.98 for 107 weeks, or $36,163.86.

[5]General Laws c. 152, § 51A, provides:

"In any claim in which no compensation has been paid prior to the final decision on such claim, said final decision shall take into consideration the compensation provided by statute on the date of the decision, rather than the date of the injury."

[6]"There would be substantial basis for deciding that the Legislature did not intend that § 51A should have any application where benefits were reduced between injury and final decision." *Madariaga's Case*, 19 Mass. App. Ct. 477, 483 (1985).

upon which a subsequent injury occurs for purposes of determining the applicable compensation rates. See *Bernardo's Case*, 24 Mass. App. Ct. at 52. There is no indication that the Legislature intended § 35B to be elective. In *McLeod's Case*, 389 Mass. 431 (1983), the Supreme Judicial Court concluded that the provisions of § 51A[7] were mandatory, using an analysis that is instructive here. The court stated that "[t]he mandatory nature of G. L. c. 152, § 51A, is demonstrated not only by the language that the Legislature employed, but also by the language it did not employ. The statute contains no guidelines for the exercise of discretion. In the absence of a clear expression of legislative intent, we think it unlikely that the Legislature intended to vest in the board unlimited discretion to choose between rates of compensation." *Id.* at 435. The use of elective provisions elsewhere in the act,[8] but not in § 35B, reinforces a nonelective construction for the section. *Ibid.*

The board's reliance upon the beneficent design of c. 152 and the dictum in *Madariaga's Case*, *supra*, for the proposition that § 35B may not be used to decrease benefits, is misplaced. It does not follow that a decrease in benefits is a frustration of the purpose of the statute. As the dissenting member of the board noted, "[a]lthough [§ 35B] was enacted to avoid the obsolescence of rates, one must recognize that such obsolescence may be caused by rates that are too high, as well as too low." See *McLeod's Case*, *supra.*

Where § 35B has been judicially construed to require application of rates in effect at the time of a "subsequent injury," the Legislature is presumed to have been aware of those decisions at the time it enacted St. 1991, c. 398. See *Meunier's Case*, 319 Mass. 421, 423 (1946); *Verrochi* v. *Commonwealth*, 394 Mass. 633, 640 (1985). The Legislature is further presumed to know the effect § 35B would have upon the other sections of c. 152, in particular, § 34, as a result of the 1991 amendments. See *Randall's Case*, 331 Mass. 383, 386 (1954); *Green* v. *Wyman-Gordon Co.*, 422 Mass. 551, 554 (1996). The 1991 revisions to c. 152 reversed the historically upward trend[9] in workers' compensation rates. The reductions in compensation rates under the 1991 legislation were sweeping and systemic, and came in response to declining economic conditions and rising

---

[7]See note 5, *supra.*

[8]See G. L. c. 152, § 24 (election of common law rights).

[9]See Locke, Workmen's Compensation § 302 (2d ed. 1981 & Supp. 1984).

costs of workers' compensation insurance. See Locke, Workers' Compensation Reform Act § 1.0 (Supp. 1995). There is no indication that the Legislature intended to spare any aspect of the prior rate structure from its design to improve the business climate by lowering workers' compensation benefits. St. 1991, c. 398, § 16, amended G. L. c. 152, § 2A, in part by adding the words "or decreases," such that it now provides, in relevant part:

> "Every act, in amendment of this chapter, in effect on the effective date of this section or thereafter becoming effective which increases *or decreases* the amount or amounts of compensation payable to an injured employee . . . shall, for the purposes of this chapter, be deemed to be substantive in character and shall apply only to personal injuries occurring on and after the effective date of such act, unless otherwise expressly provided." (Emphasis added.)

Reading § 35B in harmony with the other sections of c. 152, as we must, see *Green* v. *Wyman-Gordon Co.*, *supra*, and mindful of the cost saving purpose of the 1991 legislation, it is improbable that the Legislature did not anticipate that § 35B would result in a decrease in benefits to an employee if the prevailing rates at the time of a "subsequent injury" were lowered.

The board's decision that § 35B is elective was based upon an error of law. See G. L. c. 30A, § 14(7)(*c*). That portion of the board's decision which permits Taylor to retract his "§ 35B claim" on grounds that it is optional is reversed, and an order is to enter directing the calculation of his benefits based on the rates established by G. L. c. 152, § 34, as amended by St. 1991, c. 398, § 59. The decision of the board is, in all other respects, affirmed.

*So ordered.*