E.I. DUPONT DE NEMOURS & CO. *vs.* COMMONWEALTH.

No. 05-P-295.

Suffolk. October 5, 2005. - December 23, 2005.

Present: PERRETTA, CYPHER, & KANTROWITZ, JJ.

*Workers' Compensation Act,* Reimbursement of insurer, Special fund, Subsequent injury. *Statute,* Construction. *Insurance,* Self-insurer, Workers' compensation insurance.

This court concluded, based on the plain language of G. L. c. 152, § 65(2), that an employer who had notified the Department of Industrial Accidents that it would no longer participate in the Workers' Compensation Trust fund could not be reimbursed under G. L. c. 152, § 37, for certain benefits that it had paid to an employee who had sustained a second work-related injury after the date the employer had filed its notice of nonparticipation. [352-355]

APPEAL from a decision of the Industrial Accident Reviewing Board.

The case was heard in the Appeals Court by *Cowin,* J.

*Michael P. Mahany* for the employer.

*Pedro Benitez-Perales* for the Department of Industrial Accidents.

CYPHER, J. We are required to determine in this case whether an employer who notifies the Department of Industrial Accidents (department) that it no longer will participate in the Workers' Compensation Trust Fund (trust fund) may be reimbursed under G. L. c. 152, § 37, for certain benefits it paid to an employee who sustained a second work-related injury after the date the employer filed its notice of nonparticipation.

*Background.* On April 6, 1993, E.I. Dupont de Nemours & Co. (employer), a self-insurer,[1] notified the department, in accordance with G. L. c. 152, § 65(2), that it was electing not to

---

[1]See generally G. L. c. 152, § 25A(2).

continue its participation in the trust fund. Because the employer gave notice after March 1, the notice was not effective until July 1, 1994. See G. L. c. 152, § 65(2). On May 5, 1993, an employee sustained a second work-related injury.[2] On June 13, 1995, the employer and its employee entered into a lump sum settlement agreement, pursuant to G. L. c. 152, § 48. In 1997, the employer petitioned for reimbursement from the trust fund, pursuant to G. L. c. 152, § 37, of certain apportioned benefits paid in the 1995 lump sum settlement agreement. The employer's petition for reimbursement was denied by the trust fund. The matter was subsequently heard by an administrative judge within the department. The administrative judge denied the petition, in part, because the employer had "opted out" of the trust fund, giving up entitlement to reimbursement thereunder. The employer appealed to the reviewing board of the department (reviewing board), which affirmed solely on the basis that the employer opted out of the trust fund. A single justice of this court affirmed the decision of the reviewing board, concluding that, under the statute, an employer's entitlement to reimbursement is conditioned on participation in the fund, and that participation terminates when the employer notifies the department that it is exercising its right to "opt out."[3]

In the case now before us, the employer continues to argue that it is entitled to reimbursement from the trust fund because the injury was sustained before the effective date of its nonparticipation, or opting out.

*The trust fund.* The Legislature has long provided for funds to reimburse employers a portion of the compensation they pay to workers who suffer a second work-related injury, so as to encourage the retention of previously injured employees. See generally *American Mut. Liab. Ins. Co.* v. *Commonwealth,* 379 Mass. 398, 401-403 (1979); *Daly* v. *Commonwealth,* 29 Mass. App. Ct. 100, 101-103 (1990). "Although the statutory provi-

---

[2]For a statement of legal principles related to second injuries, see *Aetna Life & Cas. Ins. Co.* v. *Commonwealth,* 50 Mass. App. Ct. 373, 375-377 (2000). That the employee sustained a second work-related injury in this case is not in dispute.

[3]The appeal to the single justice from the reviewing board was filed before July 1, 2005, and is not affected by the rescission of this court's standing order governing appeals from that board.

sions have changed substantially over the years, the right to reimbursement has always been codified at G. L. c. 152, §§ 37 and 37A, while the funding mechanism has been codified at G. L. c. 152, § 65." *Shelby Mut. Ins. Co.* v. *Commonwealth*, 420 Mass. 251, 252 (1995). In 1985, G. L. c. 152, § 65, was rewritten by St. 1985, c. 572, § 55, to establish the trust fund, financed by assessments paid by employers, to partially reimburse employers for payment of second injury claims made by employees. *Ibid.*

In 1991, G. L. c. 152, § 65(2), was rewritten by St. 1991, c. 398, § 85, to allow private employers with a license to self-insure, as well as certain other employers, the option of not participating in, or opting out of, the trust fund by filing an irrevocable notice with the department.[4]

*Discussion.* No Massachusetts appellate decision has addressed the effect an employer's notification of opting out of the trust fund has on the employer's entitlement to reimbursement under the statute. The issue in this case is whether the reviewing board correctly determined that reimbursement from the trust fund is foreclosed to an employer for an employee's injury occurring subsequent to the employer's filing of a notice of nonparticipation. This issue presents a question of statutory interpretation. We examine the statutory language according to well-known principles. See *Gateley's Case*, 415 Mass. 397, 399 (1993).

In relevant part, G. L. c. 152, § 65(2), inserted by St. 1991, c. 398, § 85, states:

> "No reimbursements from the Workers' Compensation Trust Fund shall be made under clauses (*a*) to (*g*), inclusive, to any . . . self-insurer . . . which has chosen not to participate in the fund as hereinafter provided.
>
> ". . .
>
> "No private employer with a license to self-insure . . .

---

[4]The leading commentary, Nason, Koziol, & Wall, Workers' Compensation § 7.16 (3d ed. 2003), contains a discussion of nonparticipation provisions and factors relevant to an employer's decision to continue to participate in the trust fund, or to opt out.

shall be required to pay assessments levied to pay for disbursements under clauses (*a*) to (*g*), inclusive, . . . if such employer . . . has given up an entitlement to reimbursement under said clauses by filing a notice of non-participation with the department. Such notice shall be made to the commissioner on or before March first of any year in order to be effective as of July first of that year. Notice of non-participation shall be irrevocable . . . ."

The employer argues that the statute is ambiguous because it does not explicitly state when entitlement to reimbursement ends for injuries occurring after the filing of a notice of nonparticipation, but before its effective date. Relying on the language in § 65(2), that the filing of a notice of nonparticipation must be made by March 1 in order to be effective as of July 1 of that year, the employer urges a construction of the statute that would foreclose reimbursement only for injuries occurring after the "effective date" of opting out, that is, July 1. We do not agree that the statute is ambiguous or that an employer is entitled to reimbursement so long as the injury occurs before the effective opt out date. "We cannot read into a statute words that the Legislature did not see fit to embody in the enactment. We are bound to interpret a statute as it is written." *West's Case*, 313 Mass. 146, 149 (1943).

As correctly observed by the single justice, "[an employer] 'chooses' not to participate when it notifies the department that it is exercising its right to 'opt out.' The Legislature could have specified, but did not, that entitlement to reimbursement would terminate upon the effective date of the opt out. Its decision to focus on the election to withdraw, rather than on the actual effective date of withdrawal, is meaningful." The provisions of the statute, taken together and given their plain and ordinary meaning, compare *Taylor's Case*, 44 Mass. App. Ct. 495, 499 (1998), clearly indicate that a notice of nonparticipation expresses an employer's decision to opt out of the trust fund's mechanism of assessments and reimbursements as of the date it files the notice of nonparticipation.

This interpretation of when entitlement to reimbursement ends finds further support in the manner in which the trust fund is financed. General Laws c. 152, § 37, inserted by St. 1991, c. 398, § 71, states, in relevant part, that "[i]nsurers making

payments under this section shall be reimbursed . . . from the trust fund . . . ; provided, however, that the insurer is not a self-insurer . . . that has chosen not to be subject to the assessments which fund said reimbursements."

Section 65(4)(b) establishes a private employer trust fund budget based on the department's annual estimates, made on or before July 1 of each year, of "the total amount of funds required to make payments during the following twelve months for the compensation payable pursuant to subsection (2) of this section." G. L. c. 152, § 65(4)(b), inserted by St. 1985, c. 572, § 55. Funding of the trust fund takes place through employer assessments, G. L. c. 152, § 65(2), that are calculated on a yearly basis. G. L. c. 152, § 65(4)(a)-(d). A private employer's assessment rate for any given year is determined, in part, by consideration of "those portions of the private employer trust fund budget from which such payor is entitled to seek reimbursement pursuant to subsection (2)." G. L. c. 152, § 65(4)(d), as amended by St. 1991, c. 398, § 86. Once the assessment rate is determined, it is used to calculate the ultimate assessment to be paid by an employer pursuant to G. L. c. 152, § 65(5). The assessments paid by private employers constitute the budget available for reimbursements from its respective portion of the trust fund for that year. As a result, employers are required to report to the department annually by May 1, the losses paid for the preceding twelve months, beginning January 1 and ending on the last day of December. G. L. c. 152, § 65(3).

The provisions of the statute, requiring that an employer's notice of nonparticipation be given by March 1 in order to be effective July 1 of that year, and that an employer's report of losses for the prior year is to be given by May 1, are coordinated so that an employer electing nonparticipation will not be part of the trust fund's assessment for its next yearly cycle of funding, as it would if the employer were to continue its participation.[5,6] As the single justice observed, this method of funding the trust

---

[5]Pursuant to G. L. c. 152, § 65(2), a private employer or group that opts out of the trust fund continues to be required to pay trust fund assessments for funding disbursements under clauses (d) (vocational rehabilitation benefits) and (e) (claims against uninsured employers) of that section.

[6]In this case, the employer's notice was untimely filed after March 1, 1993,

fund, through annual assessments based on anticipated payments, constitutes essentially a "pay-as-you-go" system. Accordingly, the filing of a notice of nonparticipation is a clear indication that an employer will not enter the next cycle of assessment. Consequently, and because the notice is irrevocable, an employer could not take the steps required to engage the reimbursement mechanism for an employee injured after filing its notice of nonparticipation.

Because "the language of [the] statute is clear and unambiguous, . . . [and] the ordinary meaning of the statutory terms yields a workable result, we need not resort to extrinsic aids of interpretation such as legislative history." *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285-286 (1996). We therefore conclude that at the time of filing the notice of nonparticipation, an employer has disengaged from the trust fund's reimbursement mechanism and cannot be reimbursed for an employee's subsequent injury.[7]

*Conclusion.* For these reasons, and having "accord[ed] deference to an administrative interpretation of a statute," *Massachusetts Org. of State Engrs. & Scientists* v. *Labor Relations Commn.*, 389 Mass. 920, 924 (1983), we agree with the reviewing board that the statute plainly and unambiguously provides that upon filing its notice of nonparticipation, the employer chose not to participate further in the trust fund, and consequently was neither required to pay future assessments nor entitled to reimbursement for any injury occurring after the date of filing its notice.

> *Decision of reviewing board affirmed.*

---

so that it did not become effective until July 1, 1994. See G. L. c. 152, § 65(2). Neither the employer nor the reviewing board argues there is any significance in the late filing, and nothing in our decision turns on the late filing.

In addition, actual payment was made by the employer as a lump sum in June, 1995. Even if the employer had not given notice of nonparticipation, it would not have been able to seek reimbursement from the fund, pursuant to § 37, until 104 weeks from the onset of the disability, which was May, 1995.

[7]Given our holding in this case, it is unnecessary to address the employer's other suggestions of analogizing entitlement to reimbursement from the trust fund to principles of indemnity or contract.