## Francis Beatty's Case
### (and four companion cases[1]).

No. 12-P-1586.

Suffolk. May 10, 2013. - November 26, 2013.

Present: Cohen, Graham, & Fecteau, JJ.

*Workers' Compensation Act,* Reimbursement of insurer, Cost of living allowance. *Limitations, Statute of. Practice, Civil,* Statute of limitations. *Statute,* Construction. *Administrative Law,* Regulations. *Regulation.*

The reviewing board of the Department of Industrial Accidents (department) erred in declining to enforce a departmental regulation that set forth a two-year limitations period on certain insurers' claims, pursuant to G. L. c. 152, § 34B, for reimbursement from the Workers' Compensation Trust Fund (fund) of cost of living adjustment benefits paid to employees, where the express language of § 34B, in and of itself, did not prohibit the imposition of time restrictions on such reimbursement claims; and where the regulation was rationally related to further the statutory goal of protecting the integrity of the fund and its budget process from stale claims and the risk of a shortfall. [567-573]

Appeal from a decision of the Industrial Accident Reviewing Board.

*Kirk G. Hanson,* Assistant Attorney General, for Workers' Compensation Trust Fund.

*John J. Canniff* for the employer.

Graham, J. At issue is whether a two-year limitations period, established by a regulation of the Department of Industrial Accidents (department), see 452 Code Mass. Regs. § 3.03(3) (1999), should be applied to bar certain claims of Harvard University (Harvard), a self-insurer, for reimbursement of cost of living adjustments (COLA) from the Workers' Compensation Trust Fund (Fund), pursuant to G. L. c. 152, § 34B, as amended

---

[1]The employees in the companion cases are Maria Carvalho, Adolphus Gordon, Helena Raposo, and Francis Yebba.

by St. 1991, c. 398, § 61. The Fund appeals from a decision of
the department's reviewing board (board), declining to enforce
the regulation. We reverse the board's decision.

*Background.* General Laws c. 152, § 34B, provides that any
person receiving workers' compensation benefits under G. L.
c. 152, § 31 or § 34A, also receive an additional benefit in an
amount intended to protect the employee from the effects of
inflation. See *Sliski's Case*, 424 Mass. 126, 135 (1997). The
statute requires that insurers pay these COLA supplemental
benefits (COLA benefits) concurrently with the employee's
base benefits. Relevant here, insurers paying COLA benefits to
employees whose injuries occurred on or before October 1,
1986, are entitled to be reimbursed for those amounts from the
Fund, so long as the insured employer participates in the assess-
ment provisions that supply the revenues for the Fund, pursuant
to G. L. c. 152, § 65.

On July 22, 2010, Harvard filed claims seeking reimburse-
ment from the Fund for COLA benefits it paid to five employees,
Francis Beatty, Maria Carvalho, Adolphus Gordon, Helena
Raposo, and Francis Yebba, from July 1, 2005, through June 30,
2010. The Fund denied Harvard's claims for reimbursement for
COLA benefits Harvard paid from July 1, 2005, through July
21, 2008, as those payments were made more than two years
before Harvard filed its claims for reimbursement. A department
regulation, 452 Code Mass. Regs. § 3.03(3) (regulation), pro-
vided for reimbursement only for petitions made within two
years of the date the payment of COLA benefits was due. The
Fund did reimburse Harvard for COLA benefits paid from July
21, 2008, through June 30, 2010, as they fell within the two-
year limitations period.

Harvard appealed, and an administrative judge sided with the
Fund, finding that the two-year limitations period had a rational
purpose — to ensure timely payments of COLA benefits and to
protect the integrity of the Fund and its budget process from
stale claims. The board reversed, ruling that the Fund was not
charged with policing the prompt payment of COLA benefits,
that the Fund has not consistently applied the two-year limita-
tions period, and that the only entity that benefited from the
regulation was the Fund itself. The Fund and Harvard filed

cross appeals for judicial review, pursuant to G. L. c. 152, § 12(2).[2]

*Discussion.* Harvard, as the party challenging a properly promulgated regulation, bears the heavy burden of showing "that the regulation has no rational relationship to the goals or policies of the agency's enabling statute." *Miller* v. *Labor Relations Commn.*, 33 Mass. App. Ct. 404, 407 (1992). However, "[t]he board, as the agency charged with administering the workers' compensation law, is entitled to substantial deference in its reasonable interpretation of the statute." *Sikorski's Case*, 455 Mass. 477, 480 (2009). While "[w]e will not substitute our judgment for that of [the board] if its interpretation of a statute is reasonable," *Alves's Case*, 451 Mass. 171, 177 (2008), "this principle is one of deference, not abdication." *Leopoldstadt, Inc.* v. *Commissioner of the Div. of Health Care Fin. & Policy*, 436 Mass. 80, 91 (2002), quoting from *Protective Life Ins. Co.* v. *Sullivan*, 425 Mass. 615, 618 (1997).

The question, then, is whether the board was reasonable in its determination that the regulation's two-year limitations period "serves no rational purpose within the ambit of [G. L. c. 152, § 34B]." Our analysis "employ[s] a two-part test to assess the validity of an administrative agency's properly promulgated regulation." *Massachusetts Teachers' Retirement Sys.* v. *Contributory Retirement Appeal Bd.*, 466 Mass. 292, 297 (2013). First, we consider whether the statute is unambiguous, and if it is, "we give effect to the Legislature's intent." *Ibid.*, quoting from *Goldberg* v. *Board of Health of Granby*, 444 Mass. 627, 632-633 (2005). "Second, if the Legislature has not addressed directly the pertinent issue, we determine whether the agency's resolution of that issue may 'be reconciled with the governing legislation.' " *Ibid.*

We begin with the language of the statute. General Laws c. 152, § 34B, requires that death and disability benefits be supplemented with a COLA benefit, to be paid concurrently and without the need for application by the recipient. Section 34B(c) sets out the insurer's right to reimbursement for COLA benefits and contains no time limit for the insurer to file a claim

___

[2]Harvard's appeal concerns the application of interest to its claims for COLA reimbursement, an issue we need not reach in light of our decision.

for COLA reimbursement. Where the statute makes no reference to a limitations period, we consider "whether there is anything in the statute or its legislative history that indicates an express or implied legislative intent that such [actions] are not time limited." *State Bd. of Retirement* v. *Woodward*, 446 Mass. 698, 707 (2006). See *Nantucket* v. *Beinecke*, 379 Mass. 345, 348 (1979) (if Legislature had intended that actions not be time-limited, it would be natural for such intent to be expressed in statute).

Harvard maintains that use of the word "shall" in § 34B(*c*), providing that "[i]nsurers shall be entitled to quarterly reimbursements for supplemental benefits," evinces a legislative intent that insurers are to receive COLA reimbursements without time limits. The phrases "in no event" and "under no circumstances" have been so construed. See *State Bd. of Retirement* v. *Woodward*, 446 Mass. at 708. But we are not persuaded that "shall," in this context, signifies an unqualified right to reimbursement. Compare *Taylor's Case*, 44 Mass. App. Ct. 495, 499 (1998).[3] Section 34B(*c*) goes on to narrow the right to reimbursement by the date of injury and by the employer's participation in the Fund. In addition, § 34B(*c*) specifically links the insurer's entitlement to reimbursement to G. L. c. 152, § 65, inserted by St. 1991, c. 398, § 85, which sets out the funding mechanism for such reimbursements and imposes further requirements and restrictions on employers seeking to avail themselves of the Fund. See *E.I. Dupont de Nemours & Co.* v. *Commonwealth*, 65 Mass. App. Ct. 350, 352 (2005). We therefore do not construe the express language of § 34B, in and of itself, as prohibiting the department from imposing time restrictions on COLA reimbursement claims. See *Goldberg* v. *Board of Health of Granby*, 444 Mass. at 633, quoting from *Berrios* v. *Department of Pub. Welfare*, 411 Mass. 587, 595-596 (1992) (agency " 'has considerable leeway in interpreting a statute it is charged with enforcing' unless a statute unambiguously bars the agency's approach").

---

[3]We note that "shall" is also used in G. L. c. 152, § 5, regarding the duty of the commissioner of the department to promulgate rules and regulations consistent with carrying out the department's functions, and also appears throughout G. L. c. 152, § 65, regarding the department's duty to estimate the Fund's budget and determine annual assessments.

We next consider whether the two-year limitations period can be reconciled with the statute's underlying purpose. See *Smith v. Commissioner of Transitional Assistance*, 431 Mass. 638, 646 (2000); *Goldberg* v. *Board of Health of Granby*, 444 Mass. at 633. As noted, G. L. c. 152, § 34B, calls for COLA benefits to be paid without application by the recipient and concurrently with the recipient's base benefits. It also entitles insurers to quarterly COLA reimbursements. Prompt payment and reimbursement of COLA benefits is plainly contemplated. Moreover, since the insurer's right to reimbursement in § 34B(*c*) is explicitly tied to c. 152, § 65, we read them together. See *E.I. Dupont de Nemours & Co.* v. *Commonwealth*, 65 Mass. App. Ct. at 353-354 (interpretation of when entitlement to reimbursement ends was supported by manner in which Fund is financed).

General Laws c. 152, § 65, delineates, among other things, the process by which the Fund is to assess amounts to be paid into the Fund by participating employers. In particular, § 65 requires the department to establish the Fund's budget based on the department's annual estimates, made on or before July 1 of each year, of "the total amount of funds required to make payments during the following twelve months for the compensation payable pursuant to subsection (2) of this section." G. L. c. 152, § 65(4)(*b*).[4] It is the employer assessments that provide the Fund's revenue, and these are calculated annually, based on the losses paid by the participating employers in the preceding year, as reported to the department by May 1 of each year. G. L. c. 152, § 65(2), (3). As a consequence, an employer who chooses not to participate in the Fund must give its notice of nonparticipation by March 1, so that it will not be included in the assessments for the next year's funding. See *E.I. Dupont de Nemours & Co.* v. *Commonwealth*, 65 Mass. App. Ct. at 354. This method of annual budgetary estimate based on anticipated reimbursements is the reason we have described the Fund as a "pay-as-you-go" system. *Id.* at 355.

---

[4]The Fund, pursuant to § 65(2), provides for payments and reimbursements for seven categories of benefits, including "reimbursement of adjustments to weekly compensation pursuant to section thirty-four B." Also included are payment of benefits for claims against uninsured employers, payment for certain vocational rehabilitation benefits, and reimbursement for benefits paid for second injuries.

The department's stated reasons for promulgating the two-year limitations period in 452 Code Mass. Regs. § 3.03 were to avoid claims for COLA reimbursements more than two years from the date the COLA benefits were due, "and to avoid prejudice to employers in the application of their assessments for reimbursement of claims." Hence, eliminating older reimbursement claims was intended to further the statutory goal of maintaining the Fund's pay-as-you-go design or, as the administrative judge put it, of protecting the integrity of the Fund and its budget process from stale claims and the risk of a shortfall. We think G. L. c. 152, §§ 34B and 65, taken together, evince a clear legislative intent that the department is charged with administering the Fund and providing COLA reimbursements in a manner that promotes prompt payment, accuracy, and fairness in the budgetary and assessment process.[5] See, e.g., *ibid.* (employer's election not to participate in Fund is irrevocable, thereby precluding reengagement in reimbursement mechanism).

This statutory purpose is to be contrasted with G. L. c. 152, § 37, addressed in *Alves's Case*, 451 Mass. 171, on which Harvard relies. Section 37 provides for reimbursement for portions of workers' compensation benefits paid to reinjured employees and, as of 1991, imposes a two-year statute of limitations on reimbursement claims for injuries occurring after 1991. In *Alves's Case*, the Supreme Judicial Court declined to apply the two-year statute of limitations to the pre-1991 version of § 37 to bar the self-insurer's claim for reimbursement for benefits paid to an employee injured before 1991. *Id.* at 173-180. The court relied principally on express statutory language that the 1991 amendments were to apply prospectively. *Id.* at 172, 178-179. But also deemed significant was the purpose of § 37,

---

[5]To this end, G. L. c. 152, § 65(12), also provides: "The commissioner shall supervise, monitor and establish procedures for all aspects of the assessment of insured and self-insured employers and self-insurance groups including but not limited to the proper reporting of base amounts; the determination of proper assessment rates; the calculation, billing and collection of assessment payments; proper accounting; reporting and transmittal by insurers of assessment payments by insured employers; and all other matters necessary to assure proper compliance with this section; and may issue regulations and conduct hearings for this purpose. He also shall establish procedures for the review and adjudication of grievances by employers with respect to the propriety and accuracy of assessed payment."

which was to encourage employers to rehire injured workers, and the court reasoned that barring older reimbursement claims would undercut the incentive intended by the statute. *Id.* at 179. The case has limited application here, as § 34B mandates timely payment and reporting of COLA benefits, with the plain purpose of protecting benefit recipients against inflation and the pay-as-you-go design of the Fund's budgetary and assessment process. Wholly absent is the need to provide incentive to employers to participate by allowing stale COLA reimbursement claims to linger.

Harvard suggests, as did the board, that a procedure exists for funding older COLA reimbursement claims that were not included in the Fund's annual budget estimate and that result in a budget shortfall. General Laws c. 152, § 65(4)(c), permits the department to levy additional assessments against employers in order to raise revenues where claims exceed budget estimates within a given year.[6] Harvard points to this option as eliminating the justification for imposing a time limit on filing COLA reimbursement claims.

In our view, levying additional assessments to fund stale COLA reimbursement claims places an unintended and wholly unnecessary burden on participating employers. It poses uncertainty and inconvenience on employers required to pay unanticipated assessments, over and above those levied annually. It also imposes needless administrative costs associated with developing supplemental budgets and obtaining supplemental funding, costs that may be borne by the participating employers that provide the Fund's revenues. G. L. c. 152, § 65(2).[7] Indeed, the board's observation that only the Fund benefits from the

---

[6]General Laws c. 152, § 65(4)(c), provides, in relevant part: "Additional assessments may be levied by the commissioner, subject to the approval of the director of labor and workforce development, if he finds such assessments necessary in order to make disbursements for any expenses or compensation payments in the fiscal year which exceed the revenue generated by the assessments for the fiscal year levied pursuant to subsection (5). Any additional assessment proposed by the commissioner shall be reviewed by the advisory council. Upon an affirmative vote of at least seven voting members, the advisory council may submit its estimate of the necessary additional assessment to the director of labor and workforce development."

[7]General Laws c. 152, § 65(2), provides, in relevant part: "The reasonable and necessary costs of administering and representing the Workers' Compensation Trust Fund may be paid out, without appropriation, of said trust fund."

two-year limitations period appears to overlook the fact that it is the participating employers that in fact derive the benefit, as they are the source of the Fund's revenues and administrative costs.[8]

In light of the Fund's statutory framework, we think it an appropriate function of the department to ensure that participating employers are assessed accurately and fairly, on an annual basis, in furtherance of the pay-as-you-go system intended by the Legislature, and to avoid uncertainty and needless administrative costs associated with supplementing the budget and levying additional assessments to pay stale claims in the event of a shortfall. A two-year limitations period strikes a reasonable balance between the insurer's entitlement to COLA reimbursement and the department's responsibility to estimate the Fund's budget on an annual basis and to levy assessments and administer benefits promptly and accurately. See, e.g., *Doe* v. *Harbor Schs., Inc.*, 446 Mass. 245, 256 (2006) (statutes of limitations "represent society's considered, although often far from perfect, compromise between" plaintiffs' rights and society's need for finality). In accordance with G. L. c. 152, § 5, which instructs that the Commissioner of the department "shall promulgate rules and regulations consistent with this chapter for carrying out the functions of the department," we believe the two-year limitations period serves as a considered compromise to further the intent of the statute and its funding mechanism, and presents "a reasonable resolution of the [statute's] silence." *Massachusetts Teachers' Retirement Sys.* v. *Contributory Retirement Appeal Bd.*, 466 Mass. at 302.

The legislative history concerning the two-year limitations period confirms our view. In 1988, the department promulgated a regulation, 452 Code Mass. Regs. § 3.06 (1988), that imposed a two-year limitations period for COLA reimbursement claims. The 1988 version differed from the current regulation only in that the two years accrued from the date the COLA benefit was

---

[8]The board's additional rationale, that the Fund has not been consistent in its application of the two-year limitations period, was supported only by reference to the department's circulation letters since enactment of 452 Code Mass. Regs. § 3.03, which make no mention of the limitations period. Even assuming that this argument is relevant, nothing in the record indicates that the Fund has paid stale COLA reimbursement claims.

paid, rather than the date the benefit was due. The current form of the regulation, 452 Code Mass. Regs. § 3.03(3), became effective in 1999. In the interim, the Legislature amended the workers' compensation statute in 1991, see *Sliski's Case*, 424 Mass. at 129-130, but did so without addressing the earlier regulation's two-year limitations period for COLA reimbursement claims. We may imply legislative intent from the fact that a two-year limitations period was in effect when the Legislature revisited § 34B, and took no steps to prohibit its application.[9] See *Harborview Residents' Comm., Inc.* v. *Quincy Hous. Authy.*, 368 Mass. 425, 432 (1975); *Falmouth* v. *Civil Serv. Commn.*, 447 Mass. 814, 820 n.8 (2006); *Pavian, Inc.* v. *Hickey*, 452 Mass. 490, 494 (2008).

Based on the foregoing, we determine that the two-year limitations period set forth in 452 Code Mass. Regs. § 3.03(3) is rationally related to the purpose of G. L. c. 152, § 34B, and should be applied to the COLA reimbursement claims in this case. While we understand the board's motivation to resolve the otherwise meritorious claims on essentially equitable principles, we conclude that its decision is inconsistent with the statute and regulation, and that the analysis of the administrative judge was essentially correct. Accordingly, the decision of the board is reversed.

*So ordered.*

---

[9]The board, rather than the Fund, raised the significance of the date of the regulation's enactment at the hearing. At the board's request, the Fund submitted copies of all versions of the regulation, from 1986 to the present, and noted in particular that the two-year limitations period was in effect, in slightly different form, prior to the 1991 amendment to G. L. c. 152, § 34B. The board did not address the point in its decision and denied the Fund's motion for reconsideration, citing lack of jurisdiction.