Eastern Casualty Insurance Company, Inc. *vs.* Julie
Roberts & another.[1]

No. 99-P-1845.

Suffolk. May 7, 2001. - September 25, 2001.

Present: Armstrong, C.J., Grasso, & Cowin, JJ.

*Insurance,* Workers' compensation insurance. *Workers' Compensation Act,*
Appeal, Lump-sum settlement, Decision of Industrial Accident Reviewing
Board, Settlement agreement, Insurer. *Statute,* Retroactive effect, Effective
date. *Penalty. Due Process of Law,* Regulatory proceeding.

This court denied an employee's motion to dismiss the appeal of a workers'
compensation insurance carrier from an amended decision of the reviewing
board of the Department of Industrial Accidents on the ground that the
insurance carrier's complaint for judicial review was not filed within thirty
days of receipt of the amended decision of the board as required by G. L.
c. 152, § 12, and G. L. c. 30A, § 14, where the insurance carrier sought
review promptly upon learning of the board's adverse decision, notice of
which was delayed by the department's failure to employ legal counsel's
proper address. [623-624]

The reviewing board of the Department of Industrial Accidents erred in apply-
ing the penalty set forth in 452 Code Mass. Regs. § 1.05(5) (1990), rather
than the lesser penalty established by G. L. c. 152, § 8(1), as amended by
St. 1991, c. 398, § 23, to a workers' compensation insurance carrier that
failed to make a timely payment to an employee pursuant to a lump sum
agreement, where the statutory penalty applied because the statutory
amendment creating the penalty was in effect when the insurance carrier
failed to make timely payment [624-626]; where, even if the statutory
penalty was viewed as having retroactive effect upon an agreement entered
into prior to that penalty's effective date, such retroactive application was
consistent with the Legislature's intent in enacting the penalty and could
be imposed without unconstitutional interference with rights of the
employee [626-629]; and where the statutory penalty did not contemplate a
penalty on the penalty and the insurance carrier satisfied its obligation
thereunder by the payment of $200 to the employee [629-630].

Appeal from a decision of the Industrial Accident Reviewing
Board.

[1]Department of Industrial Accidents.

*Carl F. Schmitt* for the plaintiff.

*Lee M. Berger* for Julie Roberts.

Cowin, J. Eastern Casualty Insurance Company, Inc. (Eastern), a workers' compensation insurance carrier, appeals from an amended decision of the reviewing board of the Department of Industrial Accidents (board) ordering Eastern to pay a substantial penalty for its failure to make a timely payment to the employee Julie Roberts (employee) pursuant to a lump sum agreement. We deny the employee's motion to dismiss the appeal. We hold that the board erred in applying the penalty set forth in 452 Code Mass. Regs. § 1.05(5) (1990), and that the lesser penalty established by G. L. c. 152, § 8(1), as amended by St. 1991, c. 398, § 23, should have been imposed.

1. *Background.* We summarize the material facts (which are undisputed), the statutory history, and the proceedings to date, leaving for later description the facts relevant to the motion to dismiss.

The employee and Eastern entered a lump sum settlement agreement (see G. L. c. 152, § 48) that was approved on December 20, 1991, by the division of dispute resolution of the Department of Industrial Accidents (department). Eastern had notice of the approval that same day. The agreement called for payment by Eastern of $5,800 to the employee and $1,200 to her counsel. Pursuant to G. L. c. 152, § 8(1), as it existed on the date of approval of the agreement (see St. 1985, c. 572, § 21), Eastern had fourteen days (i.e., until January 3, 1992) in which to make payment. That version of the statute made no mention of a penalty for tardiness. However, by means of a department regulation in effect as of December 20, 1991, a failure by Eastern to make the payment on time subjected it to a penalty (payable to the employee) equal to two times the average weekly wage in the Commonwealth for the first fourteen-day period, plus one such wage for each additional seven-day period, that elapsed between notice to the insurer that payment was due and the date such payment was made (the regulatory penalty). See 452 Code Mass. Regs. § 1.05(5) (1990).[2] Furthermore, the regulation provided that, if the penalty was not

---

[2]"Failure to pay benefits within fourteen (14) calendar days of knowledge from any source that such benefits are due shall result in application of a

paid within fourteen days of demand therefor, it would continue to accrue until the penalty itself was paid. Thus, under certain circumstances, the regulation imposed a penalty upon the penalty.

Effective December 24, 1991, four days after approval of the settlement but ten days prior to the final date for payment thereunder without penalty, the Legislature amended G. L. c. 152, § 8(1), thereby providing a statutory penalty for certain late payments (including lump sum payments) and superseding the regulatory penalty previously imposed by 452 Code Mass. Regs. § 1.05(5) (1990).[3] The statutory penalty is considerably less onerous than the prior regulatory penalty. It provides, in the case of a payment by the insurer not made within fourteen days, for a penalty of $200 payable to the employee, with that penalty increasing to $1,000 if payments are not made within forty-five days; to $2,500 if payments are not made within sixty days; and to $10,000 if payments are not made within ninety days. The penalty upon the penalty feature of the regulation was eliminated. See G. L. c. 152, § 8(1), as amended by St. 1991, c. 398, § 23.[4]

Notwithstanding that Eastern received notice of approval of the settlement agreement on December 20, 1991, Eastern failed to make payment as required on or before January 3, 1992.

penalty of two (2) times the average weekly wage in the commonwealth for the first period of fourteen (14) days, and of one (1) times such wage for each additional period of seven (7) days, that has elapsed between the date of the insurer's knowledge that such benefits are due and the date such benefits are paid. Unless the penalty due is paid no later than fourteen (14) calendar days after the insurer's receipt of written notice from the employee or his designee requesting such payment, the penalty shall continue until the penalty is paid. . . ." 452 Code Mass. Regs. § 1.05(5) (1990).

[3] The act in question, St. 1991, c. 398, was approved December 23, 1991. An emergency declaration by the Governor was filed December 24, 1991.

[4] "Any failure of an insurer to make all payments due an employee under the terms of an order, decision, arbitrator's decision, approved lump sum or other agreement . . . within fourteen days of the insurer's receipt of such document, shall result in a penalty of two hundred dollars, payable to the employee to whom such payments were required to be paid by the said document; provided, however, that such penalty shall be one thousand dollars if all such payments have not been made within forty-five days, two thousand five hundred dollars if not made within sixty days, and ten thousand dollars if not made within ninety days." G. L. c. 152, § 8(1), as amended by St. 1991, c. 398, § 23.

Instead, Eastern made the required payment of $7,000 on January 16, 1992. Subsequently, Eastern paid an additional $200 to the employee, apparently pursuant to the statutory penalty provision that had taken effect December 24, 1991.[5] The employee thereupon filed with the department a claim that the substantially higher penalty provided for in the regulation, augmented by the penalty on the penalty, should have been paid.

An administrative judge denied the employee's claim. This decision was reversed by the board, which held that the regulatory penalty applied but refused to enforce the penalty on the penalty because of its doubt regarding the constitutional validity of that aspect of the regulation. Then, in an amended decision, the board concluded that the penalty on the penalty was constitutionally permissible, and applied the full regulatory penalty to July 29, 1994, tolling it as of that date on the basis that Eastern was entitled to rely upon the decision of the administrative judge in its favor, which was entered at that time. The result was the imposition of a penalty of approximately $70,000 by virtue of Eastern's payment of $7,000 thirteen days late.[6]

Pursuant to G. L. c. 152, § 12(2), the insurer appealed to this court. The standards governing the appeal are those of G. L. c. 30A, § 14(7)(*a*)-(*d*), (*f*), (*g*).[7] By virtue of Appeals Court Rule 2:04, the appeal is ordinarily decided in the first instance by a single justice. In the present case, the amended decision of the board was dated February 25, 1998, and was mailed out by the agency on the same date. For reasons set forth in the next section of this opinion, Eastern filed its complaint for judicial review in this court on April 3, 1998. The employee then filed a

[5]Following the late payment of the $7,000 lump sum, the employee demanded payment of the regulatory penalty. Apparently acting on the assumption that the regulatory penalty was still applicable, Eastern issued a check in the amount of $2,577.60. Eastern then stopped payment of that check, replacing it with a check in the amount of $200 (presumably representing the statutory penalty).

[6]Eastern's motion to stay enforcement of the amended decision pending appeal was denied by the board. Despite this, by the time of the filing of the employee's brief in this court, Eastern had yet to pay the penalty in question.

[7]The "substantial evidence" test incorporated in G. L. c. 30A, § 14(7)(*e*), no longer applies to workers' compensation appeals. See G. L. c. 152, § 12(2), as amended by St. 1991, c. 398, § 32A.

motion to dismiss the complaint for late filing. On July 16, 1998, the single justice issued an order requesting that the parties, notwithstanding the pending motion to dismiss, brief the substantive issues in the case. The parties have complied, and the case, together with the motion to dismiss, has been reserved and reported for decision by the panel.

2. *Motion to dismiss the appeal.* The employee has moved to dismiss Eastern's appeal on the ground that Eastern's complaint for judicial review was not filed within thirty days of receipt of the amended decision of the board as required by G. L. c. 152, § 12, and G. L. c. 30A, § 14. Eastern contends that the delay, if any, is attributable to confusion on the part of the department, which forwarded Eastern's copy of the board's amended decision to the wrong attorney. The parties' affidavits, which are not in material disagreement, give us sufficient factual information to conclude that the motion to dismiss should be denied.

Without detailing the underlying events, it is sufficient to say that Eastern's principal counsel, at the time of his change of law firms, gave written notice to the department of his new address. The department subsequently corresponded with him there on at least three occasions. However, when the board issued its initial and amended decisions, the department forwarded copies thereof to the attorney's prior address, at which he had not been located for close to three years. As a result, Eastern's counsel (and Eastern itself) did not learn of the final adverse determination until more than thirty days after it was rendered. Within a week of finally learning of the amended decision, Eastern filed a complaint for judicial review.

General Laws c. 152, § 12(2), provides that appeals from reviewing board decisions shall be taken in accordance with G. L. c. 30A, § 14. Section 12(2) of chapter 152 does not itself prescribe the time in which such an appeal must be filed. We look then to section 14(1) of chapter 30A, which provides in relevant part that the action for judicial review shall be commenced "within thirty days *after receipt of notice* of the final decision of the agency." (emphasis supplied). We are satisfied that, on the facts present here, notice of the final agency decision cannot be deemed to have been received until Eastern's counsel received actual notice thereof. Eastern cannot be held

responsible for delay resulting from the department's failure to employ counsel's proper address. Since Eastern sought review promptly upon learning of the adverse decision, it has complied with the filing requirement of G. L. c. 30A, § 14(1), and the employee's motion to dismiss the appeal is denied.

3. *The merits.* Eastern asserts that the statutory penalty that took effect December 24, 1991, controls because the event to which that penalty applies, i.e., the failure to make a timely payment of the lump sum settlement, occurred on January 3, 1992. Thus, Eastern argues, there is no question of retroactive application of the statutory penalty because the event triggering the penalty took place after the new penalty provision was adopted. In the alternative, Eastern argues that the Legislature intended the statutory penalty to have retroactive effect, and that this case is subject to the change because it had not reached the point in the administrative process to which the changed penalty applies (i.e., failure to make timely payment). Finally, Eastern contends that the regulatory penalty is constitutionally invalid, essentially because it exceeded the authority delegated to the department by the Legislature.

The employee argues that the regulatory penalty remains applicable because the lump sum agreement is a contract that implicitly incorporates the law as it existed at the time of its formation, including the regulatory penalty. She contends that as a result, her right to receive the regulatory penalty had "vested" at the time the parties entered into the contract, and retroactive interference with that right violates the contract clause of the United States Constitution. Furthermore, the employee asserts that promulgation of the regulatory penalty was within the department's authority; that the statutory penalty does not apply retroactively in this case because the case was completed before that penalty took effect; and that the Legislature did not intend that the statutory penalty have retroactive effect in any event. Finally, the employee argues in the alternative that, if the statutory penalty is held to apply, she is entitled to payment of $10,000 (rather than $200) because Eastern did not pay the entire penalty amount within ninety days of receipt of notice of the lump sum agreement.

We agree with Eastern that the statutory penalty applies to

this case because the statutory amendment creating the penalty was in effect when Eastern failed to make timely payment. Thus, no considerations of retroactivity are invoked. However, even if the statutory penalty is viewed as having retroactive effect upon an agreement entered into prior to that penalty's effective date, such retroactive application is consistent with the Legislature's intent in enacting the penalty and may be imposed without unconstitutional interference with rights of the employee. We hold further that the statutory penalty does not contemplate a penalty on the penalty, and that Eastern has satisfied its obligation thereunder by the payment of $200 to the employee. We address each of these issues below. In light of these determinations, we do not reach the question whether the regulatory penalty was lawfully promulgated.

(i) *Prospective application of the statutory penalty.* Because it was effective December 24, 1991, the statutory penalty was created *subsequent* to the approval of the lump sum agreement (December 20, 1991), but *prior* to the date by which payment without penalty was due (January 3, 1992). The purpose both of the statutory penalty and of the regulatory penalty that preceded it is to coerce insurers to make payments on time. Indeed, that is the purpose of imposing any penalty on a late payment: to punish the tardy payer and thereby to induce compliance by others with the time requirements. Thus, the penalty differs in this respect from an award of interest, the purpose of which is to compensate the recipient for the loss of use of the impermissibly delayed payment.

It follows that the event or conduct upon which the statute is intended to operate is not the formation of the lump sum agreement but the failure of the insurer to fulfill in a timely fashion its payment obligation thereunder. In other words, the statute applies not to the creation of the agreement, but to its performance. Other statutes and regulations govern the lump sum agreement itself. This particular amendment does not in any way alter the authority to have lump sum settlements, nor does it change the practice governing their creation or approval. It affects only what happens when a payment under such an agreement is late. Since in this case the failure to make timely payment took place subsequent to the effective date of the statu-

tory penalty, that penalty applies by simple prospective application.

(ii) *Retroactive application of the statutory penalty.* As indicated above, we do not perceive that retroactive application of the statutory penalty is involved. Nevertheless, we do not rely exclusively upon that determination. Even were the statutory penalty considered to have retroactive effect upon the lump sum agreement, we hold that such effect was purposeful and permissible on the part of the Legislature.

Whether a statute is to be applied retroactively is, in the first instance, a question of the Legislature's intent. *Moakley* v. *Eastwick*, 423 Mass. 52, 57 (1996). Here it is unnecessary to resort to interpretive tools in order to identify what that intent is, since the Legislature has stated its intention expressly. The amendment to G. L. c. 152, § 8(1), that created the statutory penalty was part of a comprehensive revision of the Commonwealth's workers' compensation statutes. See St. 1991, c. 398, revising G. L. c. 152. The amendment that brought about the statutory penalty was effected by section 23 of the said chapter 398. Section 107 of chapter 398 provides that, with the exception of sections 103 to 106, "all sections of this act shall, for purposes of section two A of chapter one hundred and fifty-two of the General Laws, be deemed to be procedural in character." General Laws c. 152, § 2A, provides that amendments to the chapter that increase or decrease compensation payable to an injured employee or his dependents shall be deemed substantive in character and shall apply only to injuries occurring on or after the effective dates of such amendments, unless otherwise provided. All other amendments are deemed procedural or remedial, and apply to injuries regardless of their date of occurrence. Read together or separately, G. L. c. 152, § 2A, and St. 1991, c. 398, § 107, make it clear that the amendment creating the statutory penalty was deemed by the Legislature to be procedural in character, and that the Legislature intended that it be retroactively applied.

We recognize that even procedural enactments may not be given unlimited retroactive effect. "At the extreme, no 'retroactive' procedural statute could apply to a case which has been closed, i.e., has gone to judgment and either been affirmed on

appeal or not been appealed within the time allowed for appeal." *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 627 (1974). The general rule on this subject is that remedial or procedural statutes will apply retroactively "to those pending cases which, on the effective date of the statute, have not yet gone beyond the procedural stage to which the statute pertains." *Id.* at 628. "If the point in the proceedings to which the statutory change is applicable has already passed, the proceedings are not subject to that change. If, on the other hand, that point has not yet been reached, the new provisions apply." *Porter* v. *Clerk of the Superior Court*, 368 Mass. 116, 118 (1975). In the present case, as set forth above, the point in the proceeding to which the statutory penalty provision relates was the time at which Eastern was required to make payment under the agreement. That point not having been reached on December 24, 1991, when the amendment became effective, the amendment applies.

The employee equates the penalty for late payment with "compensation" and argues that it is therefore substantive under G. L. c. 152, § 2A. We disagree. "Compensation" has in our jurisprudence traditionally referred to money paid to enable a claimant to recover losses. In the industrial accident context, such losses typically consist of lost wages, medical expenses, and loss of function or disfigurement. At least with respect to the regulatory penalty (which would be applicable here should the employee's argument on this issue prevail), the penalty far exceeds any genuine loss incurred by the claimant as a result of late payment. The differences in purpose and character between "compensatory" damages and "punitive" damages are well known. See *Bain* v. *Springfield*, 424 Mass. 758, 767 (1997). To the extent that the Florida Supreme Court disagrees (*Lockett* v. *Smith*, 72 So. 2d 817, 818-819 [Fla. 1954]), we decline to adopt its position.

(iii) *Constitutional considerations.* We consider whether application of the statutory penalty here has an unlawful impact upon the employee's constitutionally protected interests. The employee asserts that the statutory penalty applies retroactively to the lump sum agreement, and thus impairs the obligations of contracts in violation of art. I, § 10, cl. 1 of the United States

Constitution. In this regard, the employee contends that the law existing at the time of formation of the contract (including the regulatory penalty) became part of that contract, and that she thereby acquired an interest in receiving the penalty, which had "vested" and which cannot, consistent with constitutional principles, subsequently be taken away by a statutory change. The employee's argument, while not couched in such terms, also suggests that application of the statutory penalty rather than the regulatory penalty deprives her of property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and arts. 1, 10 and 12 of the Declaration of Rights of the Massachusetts Constitution. The considerations relevant to the respective constitutional provisions appear to be similar, focusing as they do upon a determination whether the legislative action was " 'reasonable' from any rational view the Legislature might have taken of the circumstances." *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins.*, 374 Mass. 181, 189 (1978).

In our view, the analysis both commences and ends with a decision whether this employee had any constitutionally protected interest in receipt of the regulatory penalty. As we have stated, the regulatory penalty served punitive, not compensatory, purposes. The objective of the department in promulgating it, and the objective of the Legislature in adopting the more lenient statutory penalty, was to compel timely payments by insurers by subjecting them to monetary retaliation for tardiness. The purpose is not enrichment of the employee, though that may be a by-product. Thus, the employee has not obtained by means of the lump sum agreement a cognizable property interest that is immune to a subsequent determination by the Legislature that the prior penalty was too severe. Neither the regulatory penalty nor the statutory penalty were "designed . . . to create vested rights." *Pittsley* v. *David*, 298 Mass. 552, 557 (1937).[8]

Our conclusion is not affected by cases cited by the employee

---

[8]We do not share the view that the analysis must give weight to the employee's professed reliance upon the availability of the regulatory penalty in agreeing to the lump sum settlement. We suspect that the employee entered into the agreement because she wanted the $5,800 which was her share after her counsel was paid, not because she expected the insurer would pay late and

for the propositions that existing law becomes part of the parties' contract or that the Legislature may not interfere retroactively with vested rights. See, e.g., *Feakes* v. *Bozyczko*, 373 Mass. 633, 636 (1977); *Frank Kumin Co.* v. *Marean*, 283 Mass. 332, 334-335 (1933). Stripped of their possibly misleading references to existing law becoming part of the contract, cases such as *Feakes* actually turn on what the parties intended. See *Feakes* v. *Bocyczko, supra* at 636-638 (parties to separation agreement used term "majority" in light of law as it existed at the time). Likewise, whether a party acquires a protected right as the result of a statute depends upon the purpose of that statute. See *Frank Kumin Co.* v. *Marean, supra* (statute giving creditors of corporations rights against directors passed to give security to creditors, not principally to punish directors). In the present case, the penalty provisions have a purpose opposite to that of the statute in *Frank Kumin Co.*: here they are enacted not to confer rights on employees, but instead to persuade insurers to make timely payments. Since the employee here had no protected interest in receiving the regulatory penalty, it is not necessary to consider whether retroactive interference with that interest would violate constitutional principles in accordance with the analytical framework of *American Mfrs. Mut. Ins. Co.* v. *Commissioner of Ins., supra* at 191.[9]

(iv) *Claim for a penalty on the penalty.* The employee argues in the alternative that, even if the statutory penalty applies, the penalty created thereby is a "payment due" the employee under G. L. c. 152, § 8(1), and thus is itself subject to the escalating penalty if not paid within the designated times. Eastern paid the employee a penalty of $200 on February 12, 1992, fifty-four

she would then receive approximately $70,000. In any event, in light of the nature and purpose of the penalty provisions, any expectations she may have had with respect to the penalty are of no relevance.

[9]We do not mean to suggest that the contract clause has lost its vigor or that it will not be enforced under appropriate circumstances. See, in this regard, *United States Trust Co. of N.Y.* v. *New Jersey*, 431 U.S. 1, 16 (1977); *Allied Structural Steel Co.* v. *Spannaus*, 438 U.S. 234, 241 (1978). However, those cases, which involved, respectively, attempts to repeal a statutory covenant providing protection for certain bondholders and to impose retroactively certain pension obligations, are a far cry from the present statute which, as we have indicated, affects a penalty created for the purpose of encouraging insurers to make timely payments rather than to vest rights in employees.

days after Eastern received notice of the December 20, 1991, lump sum agreement. Since this was more than forty-five days after such receipt of notice by Eastern, the employee contends that the $1,000 penalty was then applicable but not fully paid. Because more than ninety days have now passed since December 20, 1991, she contends that the $10,000 penalty now applies, and that therefore she is owed an additional $9,800. We do not read the amended G. L. c. 152, § 8(1), in this fashion.

Contrary to the employee's argument, § 8(1) does not apply to *all payments due*. Rather, it applies to "all payments due an employee under the terms of an order, decision, arbitrator's decision, approved lump sum or other agreement, or certified letter notifying said insurer that the employee has left work after an unsuccessful attempt to return . . . ." G. L. c. 152, § 8(1), as amended by St. 1991, c. 398, § 23. The insurer is required to pay within fourteen days of its "receipt of such document." *Id.* The penalty in question does not derive from a document incorporating any of the actions or agreements enumerated. It arises by operation of the statute and thus is not one of the "payments due" referred to in § 8(1). Furthermore, a comparison of 452 Code Mass. Regs. § 1.05(5) (1990), as it existed prior to its replacement by the statutory penalty, with G. L. c. 152, § 8(1), as amended by St. 1991, c. 368, § 23, demonstrates that it was the Legislature's intention to eliminate the penalty on the penalty. The payment of $7,000 due under the lump sum agreement having been made on January 16, 1992, twenty-seven days after Eastern received notice of the lump sum agreement, the $200 penalty paid by Eastern fulfilled its statutory obligation.

4. *Disposition.* The amended decision of the reviewing board is reversed. The case is remanded to the reviewing board for entry of an order in favor of Eastern.

*So ordered.*