NOTICE:  All slip opinions and orders are subject to formal revision and are superseded by the advance sheets and bound volumes of the Official Reports.  If you find a typographical error or other formal error, please notify the Reporter of Decisions, Supreme Judicial Court, John Adams Courthouse, 1 Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-1030; SJCReporter@sjc.state.ma.us

16-P-1181                                          Appeals Court

ROBERT JANOCHA'S CASE.

No. 16-P-1181.

Suffolk.     November 2, 2017. - May 2, 2018.

Present:  Neyman, Henry, & Lemire, JJ.


Insurance, Workers' compensation insurance, Self-insurer, Bond.
     Workers' Compensation Act, Reimbursement of insurer,
     Decision of Industrial Accident Reviewing Board.
     Department of Industrial Accidents.  Statute, Construction.
     Words, "Uninsured."


     Appeal from a decision of the Industrial Accident Reviewing Board.


     Jonathan D. Hacker, of the District of Columbia (John J. Canniff, III, also present) for ACE American Insurance Company.
     Douglas S. Martland, Assistant Attorney General, for Workers' Compensation Trust Fund.
     Robert H. Barry, Jr., for the employee.
     Rachel J. Eisenhaure, for Self-Insurance Institute of America, Inc., amicus curiae, submitted a brief.


     LEMIRE, J.  This is an appeal by ACE American Insurance

Company (ACE), from a decision of the reviewing board (board) of

the Department of Industrial Accidents (department).  The board

held that ACE, rather than the Workers' Compensation Trust Fund

(trust fund), was responsible for the continued payment of compensation benefits to Robert Janocha (employee) because G. L. c. 152, § 25A(2)(c), of the Workers' Compensation Act (act), G. L. c. 152, as amended, requires ACE as a reinsurer to pay benefits in the event of exhaustion of a self-insurer's surety bond.  We affirm.

Factual and procedural background.  All parties agree that there are no material facts in dispute.  The employee worked for Malden Mills Industries, Inc. (employer), until the date of his workplace injury.  The employee's injury resulted in permanent and total incapacity for work, and the employee is entitled to benefits under the act.

On the date of the employee's injury, the employer was an approved self-insurer pursuant to G. L. c. 152, § 25A(2).  In accordance with § 25A(2)(b), the employer also held a surety bond in the amount of $2.4 million[1] with Safeco Insurance Company of America (Safeco or bond holder).  In addition, the employer maintained a reinsurance policy with ACE in accordance with § 25A(2)(c).[2]  The reinsurance policy between the employer and

---

[1] In 2006, the department approved the employer's application to reduce the bond amount from $4.3 million to $2.4 million.  The process by which the bond became exhausted is not material to our decision.

[2] Although referred to as an "excess policy" in ACE's brief, no party disputes that the policy at issue is a reinsurance contract as required by G. L. c. 152, § 25A(2)(c).

ACE contained a retention provision in the amount of $400,000.[3] All terms of the bond and the reinsurance policy were approved by the department in accordance with § 25A(2) during initial approval and after every yearly review.

From the employee's date of injury until the employer's bankruptcy in 2007, the employer as the self-insurer issued direct benefit payments to the employee. Following the employer's insolvency, the bond holder issued direct benefit payments to the employee. In 2012, the $2.4 million bond became exhausted and payments to the employee ceased.[4] On the date of exhaustion, and on the date of oral argument, the employee had not reached the $400,000 retention floor contained within the reinsurance contract.

---

[3] The retention provision requires ACE to indemnify the employer for covered losses once the retention floor of $400,000 per qualifying accident is reached. The plain language of G. L. c. 152, § 25A(4)(e), precludes interpreting the retention provision as a deductible, and the employee's argument to the contrary is unavailing.

[4] The employee is not entitled to any recovery under the Massachusetts Insurers Insolvency Fund because a self-insurer is not an insurer under the definition provided by G. L. c. 175D, § 1. See Ulwick v. Massachusetts Insurers Insolvency Fund, 418 Mass. 486, 490 (1994). See also Massachusetts Care Self-Ins. Group, Inc. v. Massachusetts Insurers Insolvency Fund, 458 Mass. 268, 272 (2010).

Upon the exhaustion of the bond, the employee filed a claim with the department against ACE for resumption of benefits.[5] After a full evidentiary hearing, the administrative judge ruled that once the employer's bond was exhausted, the employer became "uninsured in violation of [the statute]" under the provisions of G. L. c. 152, § 65(2)(e), as amended by St. 1991, c. 398, § 85. The administrative judge concluded that this interpretation of the act made the trust fund the "responsible party for providing workers' compensation benefits" and that ACE was not required to make payments until the employee's benefits reached the $400,000 retention amount. The trust fund appealed to the board.

The board reversed the administrative judge, interpreting § 65(2)(e) to apply only where an employer is uninsured "on the date . . . of injury." Accordingly, the board ordered ACE to make direct payments to the employee upon the exhaustion of the bond, and to reimburse the trust fund for any payments it had made that were not covered by reimbursement from Safeco. The board also ruled that § 25A(2)(c) required ACE to pay the employee's benefits because in the event of bond exhaustion, the reinsurer must act as a "further guarantee of a self-insurer's

_____

[5] General Laws c. 152, § 11C, provides the department with jurisdictional authority to interpret questions of law related to the act.

ability to pay the [employee's] benefits" (emphasis added).[6]
Relying on Insurance Co. of the State of Pa. v. Great Northern
Ins. Co., 473 Mass. 745, 750 (2016) (Great Northern), the board
also voided the $400,000 retention provision as a matter of law
because it is in direct conflict with ACE's "statutory
obligation to assure that benefits are received by the
employee."  ACE appealed the board's decision to this court
pursuant to G. L. c. 152, § 12(2).[7]

Standard of review.  We review the board's decision in
accordance with the standards set forth in G. L. c. 30A,
§ 14(7)(a)-(d), (f), and (g).  See Scheffler's Case, 419 Mass.
251, 257-258 (1994).  "The board, as the agency charged with
administering the workers' compensation law, is entitled to
substantial deference in its reasonable interpretation of the
statute."  Sikorski's Case, 455 Mass. 477, 480 (2009).  However,
this principle is one of deference, not abdication, and

_____

[6] General Laws c. 152, § 25A(2)(c), as appearing in St.
1949, c. 441, § 4, provides in full:

"As a further guarantee of a self-insurer's ability to pay
the benefits provided for by this chapter to injured
employees, every self-insurer shall make arrangements
satisfactory to the department, by reinsurance, to protect
it from extraordinary losses or losses caused by one
disaster."

[7] Safeco was a party to the proceedings before the
administrative judge and the board.  During the pendency of the
instant appeal, the parties stipulated to dismissal with
prejudice as to Safeco pursuant to Mass.R.A.P. 29(b), as
amended, 378 Mass. 943 (1979).

"ultimately the duty of statutory interpretation is for the courts." Carpenter's Case, 456 Mass. 436, 439 (2010) (quotation omitted).

Discussion. 1. Trust fund's liability. General Laws c. 152, § 65, establishes the trust fund as a State administered fund that compensates injured employees and reimburses insurers for payment of benefits under statutorily defined circumstances. ACE contends that nothing in § 65(2)(e), or the act as a whole, supports the board's interpretation that "uninsured in violation of [the act]" means uninsured on the date of injury. After an independent review of the text, structure, and purpose of the act, we agree with the board's interpretation of § 65(2)(e).

"[A] statute must be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." Scheffler's Case, 419 Mass. at 255, quoting from Board of Educ. v. Assessor of Worcester, 368 Mass. 511, 513 (1975). Additionally, the act must be analyzed "as a whole . . . so that the various portions taken together shall constitute a harmonious and consistent legislative enactment."

Spaniol's Case, 466 Mass. 102, 107 (2013), quoting from Price v. Railway Express Agency, Inc., 322 Mass. 476, 480 (1948).

Section 65(2)(e) conditions payment of benefits by the trust fund to a qualifying employee whose employer is "uninsured in violation of this chapter."  While the act contains an extensive list of definitions, nothing in the chapter expressly defines the word "uninsured," and § 65(2)(e) does not specifically identify the applicable operative date of the employer's uninsured status.  Despite the absence of a definition connecting the employer's uninsured status to the date of the employee's injury, viewing the statute as a whole, it is clear that the date of injury is essential to determining who is eligible to receive benefits as well as who is obligated to pay them.  Because § 65(2) is the sole source of the trust fund's obligation to pay workers' compensation benefits, examining the provisions that surround § 65(2)(e) provides clarity as to whether 'uninsured' implicitly means uninsured on the date of injury.  See People for the Ethical Treatment of Animals, Inc. v. Department of Agric. Resources, 477 Mass. 280, 287-288 (2017), quoting from Kenney v. Building Commr. of Melrose, 315 Mass. 291, 295 (1943) ("A general term in a statute or ordinance takes meaning from the setting in which it is employed").

We begin with § 65(2)(a)-(b). Section 65(2)(a) refers to § 34B and § 65(2)(b) refers to § 35C. This court has concluded that both of those cross-referenced sections expressly look to the date of workplace injury when considering the insurer or self-insurer's right to reimbursement from the trust fund for benefits paid to employees under these provisions. See, e.g., Beatty's Case, 84 Mass. App. Ct. 565, 568 (2013) ("Section 34B[c] goes on to narrow the right to reimbursement by the date of injury").

The date of injury is also implicitly important for other cross-referenced provisions in § 65(2). Section 65(2)(c), (f), and (g), by means of § 37, § 26, and § 37A, respectively, authorizes certain reimbursements from the trust fund to the insurer or self-insurer for payments to an employee who has suffered a personal injury "arising out of and in the course of his employment." G. L. c. 152, § 26. A plain and ordinary reading of the "arising out of" condition, which is contained in § 26, § 37, and § 37A, imparts a meaning that the date of the employee's injury is an essential factor to be considered in determining reimbursements from the trust fund to the insurer or self-insurer. See Pearson's Case, 341 Mass. 576, 576-577 (1960) (interpreting "arising out of" necessarily requires examining the employee's "place of employment at the time of . . . injury"). A contrary interpretation of "arising out of" leads

to the absurd result that an employee injured outside the course of employment on the date of injury would still be entitled to benefits under the act.  See Caswell's Case, 305 Mass. 500, 502-503 (1940).

Here, the relevant surrounding provisions all strongly suggest imparting the temporal restriction into § 65(2)(e).  Thus, the board's interpretation that "uninsured in violation of [the statute]" means uninsured on the "date of . . . injury" is not reading additional language into the text but, instead, constitutes a reasonable interpretation of § 65(2)(e) consistent with § 65(2) and the act as a whole.  See Franklin Office Park Realty Corp. v. Commissioner of the Dept. of Envtl. Protection, 466 Mass. 454, 462 (2013) ("Words grouped together in a statute must be read in harmony").

Even aside from the express language of the statute, the system of workers' compensation has long been interpreted to rest on the principle that "[a]n insurer is not responsible unless the period covered by its policy includes the time of the injury."  Crowley's Case, 287 Mass. 367, 371 (1934) (quotation omitted).  See Brophy's Case, 327 Mass. 557, 559 (1951) ("One of the most vital factors in determining to whom and by whom compensation is to be paid under the statute is the date on

which the injury occurs").[8]  While an explicit legislative mandate may have been preferred, the structure, history, and purpose of § 65(2)(e) clearly show that "uninsured" status must be determined on the date of injury.  To separate "uninsured" from the date of injury is inconsistent with the purpose of the statute.  The board's interpretation of G. L. c. 152, § 65(2)(e), which reads "date of injury" as an implied term of § 65(2)(e), is necessary to assure that the distribution of benefits from the trust fund will be in harmony with the provisions of § 65(2) and, thus, is entitled to deference.[9]  See generally Molly A. v. Commissioner of the Dept. of Mental Retardation, 69 Mass. App. Ct. 267, 280 (2007).  Here, it is

---

[8] We acknowledge that date of injury is only "[o]ne of the most vital factors in determining to whom and by whom compensation is to be paid under the statute."  Brophy's Case, 327 Mass. at 559.  In the instant case, no other factor is relevant to our interpretation of § 65(2)(e).

[9] We acknowledge the amicus brief of the Self-Insurance Institute of America, Inc., and its argument that the board's interpretation may result in an increase in premiums charged for excess workers' compensation insurance.  However, the "pay-as-you-go" nature of the act, which funds the trust fund through annual assessments based on anticipated payments, suggests that the burden on self-insurers in the Commonwealth will be minimal.  See Markos-Waiswilos v. Salem Hosp., 67 Mass. App. Ct. 904, 905-906 (2006).  Interpreting "uninsured" to mean "uninsured at date of injury" avoids decades-old claims against the trust fund that could require the trust fund to obtain supplemental funding from employers.  Thus, all participating employers may benefit under this reading because they avoid increased payments into the trust fund as a result of retroactive claims that become ripe only when a bond is exhausted.  See Beatty's Case, 84 Mass. App. Ct. at 571-572.

undisputed that the employer qualified as a self-insurer on the date of the employee's injury, and therefore was not uninsured on that date, and in fact paid benefits until it went bankrupt some two years later.  Therefore, the trust fund has no obligation under § 65(2)(e) to pay compensation benefits to the employee.

2.  ACE's liability.  Having determined that the trust fund is not liable to pay the employee's benefits, we now examine ACE's statutory obligation.  "In order to promote the health, safety and welfare of employees," § 25A of the act, inserted by St. 1943, c. 529, § 7, requires every employer operating within the jurisdiction of Massachusetts to obtain workers' compensation insurance in one of two ways:  employers may either purchase insurance, pursuant to § 25A(1), or, as here, they may apply to become self-insurers who pay benefits to injured employees directly, pursuant to § 25A(2).

In order to receive or maintain licensure as a self-insurer, the department requires the employer to keep either a bond or surety running to the Commonwealth for the benefit and security of the employees in accordance with § 25A(2)(a) or (b). In addition, § 25A(2)(c) requires the employer acting as a self-insurer to purchase reinsurance in such amount and form as the department may approve.  Section 25A(2)(c), which we have set

out in the margin (see note 6, supra), forms the background for the reinsurance policy between the employee and ACE.

Section 25A, like every part of the act, must be given an interpretation that protects the rights of employees because the act's exclusivity provision often makes the act the only avenue for financial compensation for the impairment of an injured worker's earning capacity. See Walker's Case, 443 Mass. 157, 161 (2004). The act as a whole "is a remedial statute and should be given a broad interpretation, viewed in light of its purpose and to 'promote the accomplishment of its beneficent design.'" Neff v. Commissioner of the Dept. of Industrial Accs., 421 Mass. 70, 73 (1995), quoting from Young v. Duncan, 218 Mass. 346, 349 (1914). ACE argues that despite the beneficent design of the act as a whole, the reinsurance requirement of § 25A(2)(c) was not intended as a protection for the injured employee in the event of the self-insurer's inability to continue paying benefits but, instead, as a protection for the employer from "extraordinary losses or losses caused by one disaster." See note 6, supra. We disagree.

The language of § 25A(2)(c) specifically provides that reinsurance shall further guarantee the self-insured's ability to pay benefits to injured employees. To the extent the statute is concerned about a self-insurer incurring extraordinary losses, it is in the context of ensuring that a self-insured

will continue to be able to pay benefits to injured employees in the event of such losses. A review of the legislative history of § 25A shows that any argument that the statute is concerned about the success of the self-insurer separate and apart from its ability to pay benefits to injured employees is specious.

Section 25A was added to G. L. c. 152 in 1943 to require every employer to cover workplace injuries through insurance or self-insurance, replacing an elective system. See St. 1943, c. 529, § 7. See also New England Survey Sys., Inc. v. Department of Industrial Accs., 89 Mass. App. Ct. 631, 635 (2016). The 1943 legislation also created a reinsurance provision, G. L. c. 152, § 25A(2)(c), which applied to self-insurers in the discretion of the department. See St. 1943, c. 529, § 7 ("As a further guarantee of a self-insurer's ability to pay the benefits provided for by this chapter to injured employees, the department may require that a self-insurer reinsure his compensation risk against catastrophe" [emphasis added]).

Five years later, § 25A(2)(c) was amended to add what is now a second paragraph. That amendment expressly extended the department's regulatory authority beyond solely the self-insurer to the reinsurer as well. See St. 1948, c. 176. The section was again amended in 1949 to add new language to the second paragraph. The 1949 amendment requires reinsurance proceeds to

be used exclusively for the benefit of injured employees by precluding creditors from attaching the reinsurance proceeds,[10] and making the use of "any money received by a self-insurer . . . subject to the approval of the [department]."  St. 1949, c. 441, § 4.

These amendments demonstrate that the Legislature's purpose in fashioning the workers' compensation reinsurance provision was the protection of injured employees.  If the primary purpose of § 25A(2)(c) were to protect the employer rather than the employee, the Legislature would have permitted creditors to attach reinsurance proceeds like any other corporate asset rather than allow department regulation of reinsurers once an employer becomes insolvent.

The 1949 amendment to § 25A(2)(c) additionally made reinsurance mandatory for self-insurers; previously, this had been left to the discretion of the department.  Making reinsurance mandatory, instead of merely at the discretion of the department, shows that the phrase "further guarantee of [the] ability to pay . . . benefits" in § 25A(2)(c) is

---

[10] The 1949 amendment provides, in pertinent part:

"[N]o . . . money [received by a self-insurer under the reinsurance provision] shall be assignable or subject to attachment or be liable in any way for the debt of the self-insurer unless incurred under this chapter."

St. 1949, c. 441, § 4.

controlling because even self-insurers with a low risk of catastrophic injuries to their workers were required to obtain reinsurance.

In sum, the amendments to § 25A(2)(c), which has remained largely unchanged since 1949, demonstrate a clear legislative intent to continually strengthen the reinsurance requirement not for the employer's protection from "extraordinary losses or losses caused by one disaster," but primarily to "further guarantee [payment of] benefits . . . to injured employees."

Reading these amendments in light of the broad public policy to provide compensation for injured workers, we agree with the board's interpretation that the "further guarantee" clause of § 25A(2)(c) requires the reinsurer to pay benefits to employees in the event the self-insurer becomes insolvent and the bond becomes exhausted, avoiding an otherwise inevitable gap in coverage.  See New England Survey Sys., Inc., 89 Mass. App. Ct. at 635 ("The fundamental aim of public policy in the area of workers' compensation is to provide relief to injured workers and their families and remedy the deprivation of wages that results from their injuries").

ACE contends that despite this statutory obligation, the insurance policy's retention provision precludes ACE's payment of benefits to the employee until the $400,000 amount is reached.  However, a party is unable to contract away its

statutory obligation, and we routinely void provisions that run contrary to the law.[11]  This is especially true in the instant context because "[w]orkers' compensation insurance is a creature of statute, and all workers' compensation insurance policies must be interpreted to comply with applicable statutes and regulations governing workers' compensation."  Great Northern, 473 Mass. at 750.  See Frost v. David C. Wells Ins. Agency, Inc., 14 Mass. App. Ct. 305, 307 (1982).  Simply put, ACE entered into a reinsurance policy between itself and the employer with full knowledge that the act required ACE to "further guarantee" payment of compensation to the employee.  Accordingly, the instant retention provision is null and void, and ACE must assume its obligation to pay benefits to the employee under § 25A(2)(c).

Decision of the reviewing
board affirmed.

---

[11] Because of the unique nature of the act, other cases in which Massachusetts courts have refused to void insurance retention policies are inapplicable.  Compare Great Northern, 473 Mass. at 750-751 (nullifying policy provision in context of workers' compensation insurance) with Vickodil v. Lexington Ins. Co., 412 Mass. 132 (1992) (motor vehicle liability insurance); Massachusetts Bay Transp. Authy. v. Allianz Ins. Co., 413 Mass. 473, 479-480 (1992) (liability insurance); and Allmerica Financial Corp. v. Certain Underwriters at Lloyd's, London, 449 Mass. 621, 623 (2007) (professional services liability insurance).