NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

25-P-116                                          Appeals Court

   EMPLOYER'S REINSURANCE CORPORATION  vs.  WORKERS' COMPENSATION
                          TRUST FUND.

                         No. 25-P-116.

      Suffolk.     November 13, 2025. – January 30, 2026.

           Present:  Meade, Ditkoff, & Toone, JJ.


Department of Industrial Accidents.  Workers' Compensation Act,
     Decision of Industrial Accident Reviewing Board, Cost of
     living allowance, Reimbursement of insurer.  Insurance,
     Workers' compensation insurance.  Insurance Company.
     Statute, Construction.  Administrative Law, Agency's
     interpretation of statute.  Practice, Civil, Notice of
     appeal.



     Appeal from a decision of the Industrial Accident Reviewing
Board.


     Ronald C. Kidd (Charles R. Casartello, Jr., also present)
for the plaintiff.
     Arjun K. Jaikumar, Assistant Attorney General, for the
defendant.


     DITKOFF, J.  Employer's Reinsurance Corporation (ERC)

appeals from a decision of the reviewing board of the Department

of Industrial Accidents (board), denying ERC's claim for

reimbursement of certain workers' compensation benefits from the Workers' Compensation Trust Fund.  The board's decision properly relied on our opinion in Home Ins. Co. v. Workers' Compensation Trust Fund, 88 Mass. App. Ct. 189 (2015).  Since the board's decision, however, first this court and then the Supreme Judicial Court have overruled Home Ins. Co. on the ground that the Legislature has listed the only three categories of employers not entitled to reimbursement, and thus the board could not add a fourth (there, that the insurer was no longer writing new policies).  See Arrowood Indem. Co. v. Workers' Compensation Trust Fund, 104 Mass. App. Ct. 419, 423-425 (2024), S.C., 496 Mass. 222 (2025).  We reject an attempt to add a different fourth exception (here, that the employer is insolvent) for the same reasons.  Further concluding that ERC's appeal was timely and that ERC is an "insurer" within the meaning of G. L. c. 152, § 1 (7), we reverse.

1.  Background.  The Workers' Compensation Trust Fund (trust fund) is a State fund that provides workers' compensation benefits to injured employees whose employers were illegally uninsured.  G. L. c. 152, § 65 (2) (e).  See Sellers's Case, 452 Mass. 804, 804 n.2, 812 (2008).  It also provides partial or complete reimbursement to insurers paying any one of five types of compensation.  G. L. c. 152, § 65 (2) (a)-(c), (f), (g).  Two of these types of compensation are relevant for our purposes.

First, the trust fund reimburses insurers for seventy-five percent of benefits paid to "previously injured employees who sustain a further work-related injury." Arrowood Indem. Co., 496 Mass. at 223. See G. L. c. 152, §§ 37, second par., 65 (2) (c). Second, if the injury occurred prior to October 1986,[1] the trust fund reimburses insurers for cost of living adjustments (COLA) to base benefits to the extent they exceed "five percent in the average weekly wage in the commonwealth in any single year." G. L. c. 152, §§ 34B (c), 65 (2) (a). See Gaines's Case, 98 Mass. App. Ct. 205, 207 (2020).[2]

In 1979, Annie Talbert, an employee of the Polaroid Corporation (Polaroid), sustained an industrial injury. At the time of the injury, Polaroid was a licensed self-insurer. As a licensed self-insurer, Polaroid was required to secure a bond to guarantee payment if it ceased to do business, G. L. c. 152, § 25A (2) (b),[3] and to obtain reinsurance to cover "extraordinary losses," G. L. c. 152, § 25A (2) (c). Polaroid did so by

---

[1] The cost of living adjustments were created in December 1985 by St. 1985, c. 572, § 43A, and October 1, 1986, was the first review date for cost of living adjustments. G. L. c. 152, § 34B, first par.

[2] In December 1991, the Legislature capped COLA at five percent. See Massachusetts Insurers Insolvency Fund v. Workers' Compensation Trust Fund, 496 Mass. 234, 237 n.4 (2025).

[3] In the alternative, Polaroid could have deposited a bond with the State Treasurer. G. L. c. 152, § 25A (2) (a).

securing a bond with Greenwich Insurance Company (Greenwich) and an excess reinsurance policy with ERC. In November 1986, after Talbert was determined to be totally and permanently disabled, Polaroid began paying her benefits, which soon included COLA. Polaroid received reimbursement from the trust fund for a portion of the COLA benefits paid to the employee.

Once Polaroid had paid $250,000 (and its losses became extraordinary pursuant to the reinsurance contract), ERC began reimbursing Polaroid for the base benefit (but not for the COLA).[4] In 2004, Polaroid declared bankruptcy. Greenwich then paid both base benefits and COLA to the injured employee.[5] ERC reimbursed Greenwich for the base portion of the benefits paid, but not the COLA benefits. Greenwich continued to pay benefits to the employee until the bond was exhausted in 2013.

In February 2013, Talbert filed a claim with the Department of Industrial Accidents (department) against ERC for benefits. See Talbert v. Polaroid Corp., 30 Mass. Workers' Comp. Rep. 271,

---

[4] ERC paid Polaroid sixty percent of the base benefit but later acknowledged that its contract required it to pay Polaroid for the entire base benefit (but not the COLA). Talbert v. Polaroid Corp., 30 Mass. Workers' Comp. Rep. 271, 272 n.1 (2016) (Talbert I).

[5] Greenwich applied for COLA reimbursement from the trust fund but its application was determined to be time barred. See Beatty's Case, 84 Mass. App. Ct. 565, 572 (2013) (upholding two-year limitations period for COLA reimbursement requests).

272-273 (2016) (Talbert I).  The trust fund was joined to the action.  An administrative judge ruled that the employer was uninsured and therefore the employee was entitled to be paid base and COLA benefits by the trust fund.  Id. at 273.  The judge further ruled that the trust fund was entitled to payment from ERC pursuant to the reinsurance contract.  Id.  On appeal,[6] applying its ruling in Janocha v. Malden Mills Indus., Inc., 30 Mass. Workers' Comp. Rep. 165 (2016), aff'd, Janocha's Case, 93 Mass. App. Ct. 179, 187 (2018), the board reversed this decision and required ERC to pay the base and COLA benefits directly to the employee.  Talbert I, supra at 273-274.

In May 2017, ERC filed a claim for reimbursement of COLA benefits with the trust fund, which the trust fund denied.  In 2018, ERC filed the present action with the department against the trust fund seeking the reimbursement of the proper portion of the COLA benefits.  Relying on our decision in Home Ins. Co., both the administrative judge and the board found that ERC was not eligible for reimbursement from the trust fund, because "ERC did not participate in the system by writing insurance and/or collecting and remitting assessments."  Talbert v. Polaroid Corp., 35 Mass. Workers' Comp. Rep. 147, 151-152 (2021) (Talbert II).  This appeal followed.

---

[6] Appeals from orders of an administrative judge after a hearing are to the board.  G. L. c. 152, § 11C.

Before we continue, it is important for the reader to understand that we subsequently overruled <u>Home Ins. Co</u>. in <u>Arrowood Indem. Co</u>., 104 Mass. App. Ct. at 423-425. The Supreme Judicial Court granted further appellate review and agreed with our decision to overrule <u>Home Ins. Co</u>. See <u>Arrowood Indem. Co</u>., 496 Mass. at 222-223, 229.

2. <u>Standard of review</u>. "We review the board's decision in accordance with the standards set forth in G. L. c. 30A, § 14 (7) (<u>a</u>)-(<u>d</u>), (<u>f</u>), and (<u>g</u>)." <u>Janocha's Case</u>, 93 Mass. App. Ct. at 181-182. Under these standards, "[w]e may reverse or modify the board's decision where, among other reasons, it is based on an error of law." <u>Wright's Case</u>, 486 Mass. 98, 107 (2020), quoting <u>Spaniol's Case</u>, 466 Mass. 102, 106 (2013). "Because the board's interpretations [of the statutes] are questions of law, our review is de novo." <u>Massachusetts Insurers Insolvency Fund</u> v. <u>Workers' Compensation Trust Fund</u>, 496 Mass. 234, 239 (2025).

We interpret statutes de novo, giving "'substantial deference' to the [board's] interpretation of the statute it is charged with administering." <u>Anketell</u> v. <u>Office of Consumer Affairs and Business Regulation</u>, 101 Mass. App. Ct. 628, 632 (2022), quoting <u>Mendes's Case</u>, 486 Mass. 139, 143 (2020). If, however, the board's interpretation of the statute is incorrect,

it is not entitled to deference. See Craft Beer Guild, LLC v. Alcoholic Beverages Control Comm'n, 481 Mass. 506, 512 (2019).

3. Appellate jurisdiction. Pursuant to G. L. c. 152, § 12 (2), an appeal from the board's decision is made directly to the Appeals Court and is otherwise governed by G. L. c. 30A, § 14 (1). Under G. L. c. 30A, § 14 (1), an appeal from a decision by the board shall be commenced "within thirty days after receipt of notice of the final decision." G. L. c. 30A, § 14 (1). See Herrick v. Essex Regional Retirement Bd., 68 Mass. App. Ct. 187, 189 (2007). See also Ramaseshu v. Board of Registration of Med., 441 Mass. 1006, 1006 (2004) (denying review of appeal filed seven years after appellant received notice of board's final decision). The board issued its decision here on November 5, 2021, and posted it to its website. For reasons that have not been explained, the board sent notice of the decision by electronic mail to the trust fund and to the employee, but not to ERC.

We have previously suggested that actual notice would suffice to begin the thirty-day clock. See Eastern Cas. Ins. Co. v. Roberts, 52 Mass. App. Ct. 619, 623 (2001). Here, however, counsel for ERC filed an uncontested affidavit that he first learned of the decision on November 18, 2024, when counsel for the trust fund informed him of it. See id. (appellate court may decide whether appeal should be dismissed based on parties'

affidavits).  ERC's counsel then filed a notice of appeal with this court within thirty days, on December 12, 2024.

In Eastern Cas. Inc. Co., 52 Mass. App. Ct. at 623, the board similarly failed to notify the insurance company of its decision, there because it failed to process a change of address.  We concluded that the company "cannot be held responsible for delay resulting from the department's failure to employ counsel's proper address," and that "notice of the final agency decision cannot be deemed to have been received until Eastern's counsel received actual notice thereof."  Id. at 623-624.  We denied a motion to dismiss the appeal because "Eastern sought review promptly upon learning of the adverse decision."  Id. at 624.  Similarly, here ERC filed a notice of appeal in a timely manner once it learned of the board's decision and, therefore, the appeal is properly before us.

4.  Reimbursement.  The trust fund is supported by assessments imposed on employers and collected by insurance companies and self-insurers who then transmit the assessments to the trust fund.  See G. L. c. 152, §§ 65 (2), second par., 65 (5); Arrowood Indem. Co., 496 Mass. at 223.  Self-insurers and public employers have the option to opt out of paying into the trust fund, but the consequence is that they lose the ability to obtain reimbursement from it.  G. L. c. 152, § 65 (2), third & fourth pars.; Arrowood Indem. Co., supra at

224.  Accordingly, the statute provides that the trust fund shall not provide reimbursement of benefits "to any non-insuring public employer, self-insurer or self-insurance group which has chosen not to participate in the fund" under G. L. c. 152, § 65. G. L. c. 152, § 65 (2), first par.  In Home Ins. Co., 88 Mass. App. Ct. at 193, we approved the board's creation of a fourth exception to the reimbursement requirement, for insurance companies no longer collecting or transmitting trust fund assessments because they were in run-off and thus were no longer writing new workers' compensation policies.  In 2024, we overruled Home Ins. Co., concluding that the board had impermissibly altered the Legislature's delineation of exactly three excluded recipients by adding a new one of its own creation.  Arrowood Indem. Co., 104 Mass. App. Ct. at 423.

The Supreme Judicial Court agreed with us, stating that "the repeated articulation of the three entity types ineligible for second-injury reimbursement, and the repeated omission of insurers in run-off from those articulations, necessarily implies that such insurers are not ineligible for reimbursement under the act."  Arrowood Indem. Co., 496 Mass. at 231.  The court further stated that the statute "provides little to no support for the argument that insurers should not be reimbursed by the trust fund unless they continue to provide for the funding of the trust fund."  Id. at 232-233.

Although Arrowood Indem. Co. involved second-injury reimbursement, the court applied its holding to COLA reimbursements as well in Massachusetts Insurers Insolvency Fund, 496 Mass. at 242-243, because all of the trust fund reimbursement categories use the exceptions stated in G. L. c. 152, § 65 (2), first par. -- again explicitly recognizing the abrogation of Home Ins. Co. Accordingly, the board's reliance on Home Ins. Co., although certainly proper at the time, is in error.

To this, the trust fund argues that Arrowood Indem. Co. is distinguishable because in Arrowood Indem. Co. the insurer (but not the employer) was in run-off, and here the employer is no longer in business and thus not paying assessments. This argument, however, merely recreates the basic error in Home Ins. Co. The Legislature has stated that three categories of employers are ineligible for reimbursement -- those that chose to opt out of the trust fund -- which does not include insolvent employers. G. L. c. 152, § 65 (2), first par. The board cannot create a fourth exception, whether for insurers in run-off or for insolvent employers or for anything else. The board can no more rewrite a statute than we can.

Indeed, in Arrowood Indem. Co., the Supreme Judicial Court considered in dicta this very situation. As the court stated, "even if that employer had gone out of business, which is a

possibility emphasized by the trust fund, it would be other participating employers, not the insurance companies, that would have to make up the loss in trust fund revenues." Arrowood Indem. Co., 496 Mass. at 233 n.8.

Polaroid does not fall into any of the three exceptions stated in G. L. c. 152, § 65 (2), and G. L. c. 152, § 34B (c). At the time of Talbert's injury, Polaroid was a self-insurer that participated in the trust fund. See Beatty's Case, 84 Mass. App. Ct. 565, 568 (2013) ("Section 34B[c] goes on to narrow the right to reimbursement by the date of injury and by the employer's participation in the Fund"). Similarly, ERC does not fall into any of the three exceptions. Accordingly, it is entitled to reimbursement under the plain meaning of the statute.

5. Definition of insurer. a. Preservation. The trust fund argues for the first time on appeal that ERC is not an insurer. Generally, "a party is not entitled to raise an argument on appeal that was not raised before the administrative agency." Tri-County Youth Programs, Inc. v. Acting Deputy Director of the Div. of Employment & Training, 54 Mass. App. Ct. 405, 412-413 (2002), quoting Boston Neighborhood Taxi Ass'n v. Department of Pub. Utils., 410 Mass. 686, 693 (1991). Because this issue was not addressed in the board's reasoning, "we are unable to determine whether [the] appellant has met [its] burden

of proof that a decision of the department is improper." Massachusetts Inst. of Tech. v. Department of Pub. Utils., 425 Mass. 856, 868 (1997), quoting Costello v. Department of Pub. Utils., 391 Mass. 527, 533 (1984). In this situation, at most we could remand the issue to the department for subsidiary findings. See, e.g., Costello, supra at 536-537. Because, however, the argument lacks merit, no such remand is warranted.

b. Merits. It is strange that the trust fund would make the argument that ERC is not an insurer for purposes of G. L. c. 152. By statute, the COLA benefits "shall be paid by the insurer." G. L. c. 152, § 34B (c). Indeed, "the insurer shall pay to the injured employee" the base benefits as well. G. L. c. 152, § 34A. If the trust fund were correct, ERC would not be required to pay the employee at all, and the trust fund would be required to pay the employee, subject to ERC's reinsurance obligations to pay for the base benefits only, up to its policy limit.

Although ERC would welcome the trust fund's argument, it is not supported by statute or case law. The statute defines "insurer" as "any insurance company, reciprocal, or interinsurance exchange, authorized so to do, which has contracted with an employer to pay the compensation provided for by this chapter." G. L. c. 152, § 1 (7). It also includes

self-insurers and public employers providing workers' compensation benefits. G. L. c. 152, § 1 (7).

ERC, an insurance company, issued a reinsurance policy to Polaroid, and was authorized to do so. The policy purported not to require ERC to pay benefits directly to any employee, but nonetheless was specifically a contract to "pay the compensation provided for by this chapter." G. L. c. 152, § 1 (7). Pursuant to the contract, ERC agreed to pay the employer for workers' compensation benefits if necessary and, in fact, paid Polaroid and then Greenwich for base benefits each paid to the employee. Accordingly, ERC qualifies as an insurer under the Workers' Compensation Act. See G. L. c. 152, § 1 (7).

Moreover, as a matter of law, ERC's contract required it to pay benefits directly to the employee, as the board found in Talbert I, 30 Mass. Workers' Comp. Rep. at 271. As we held in Janocha's Case, 93 Mass. App. Ct. at 187, a reinsurance company "enter[s] into a reinsurance policy between itself and the employer with full knowledge that the act require[s] [the reinsurer] to 'further guarantee' payment of compensation to the employee." Any provision in the contract that purports to require otherwise "is null and void, and [the reinsurer] must assume its obligation to pay benefits to the employee under [G. L. c. 152,] § 25A(2)(c)." Janocha's Case, supra at 187-188. Accordingly, as a matter of law, ERC's reinsurance contract is a

contract to pay injured employees workers' compensation benefits directly if such becomes necessary.  Even if ERC were not considered an insurer before Polaroid's bankruptcy and the exhaustion of the Greenwich bond, it is now.

6.  <u>Conclusion</u>.  The board's decision is reversed.  We remand to the board for further proceedings consistent with this opinion.

<u>So ordered</u>.